(December 3, 1900.)

## STATE v. MARQUARDSEN.

(62 Pac. 1034.)

GRAND LARCENY—INSUFFICIENT EVIDENCE.—Evidence in this case considered, and found insufficient to warrant conviction.

NEW TRIAL—IMPEACHING VERDICT.—A motion for a new trial, based upon affidavits of individual jurors impeaching the verdict of a jury of which said affiants were members, cannot be sustained.

(Syllabus by the court.)

APPEAL from District Court, Canyon County.

Hawley & Puckett, for Appellant.

The attempt to imply guilt because Branthover saw heads in the open cellar upon a certain occasion will hardly be seriously considered here. This case is parallel in every material respect with the case of *State v. Seymour,* ante, p. 257, 61 Pac. 1033. There is absolutely no evidence to sustain the verdict, and it must be presumed to have been rendered under the influence of passion and prejudice and should be set aside. (*State v. Nesbit,* 4 Idaho, 548, 43 Pac. 66; *State v. Crump,* 5 Idaho; 166, 47 Pac. 814; *State v. Mason,* 4 Idaho, 543, 43 Pac. 63.) The single circumstance that the defendant is in possession of

stolen property within a few days after it left the owner's possession is not sufficient evidence to justify a conviction of larceny. (*People v. Swinford,* 57 Cal. 86; *People v. Noregea,* 48 Cal. 123; 3 Greenleaf on Evidence, sec. 31; *People v. Chambers,* 18 Cal. 383.) In a prosecution for grand larceny a party defendant who was not present, and did not participate in the theft, but subsequently with a guilty knowledge that it was stolen, received and aided in the disposition of the stolen property, is not, under the statutes in this state, an accessory after the fact, but is liable as a receiver of stolen goods. (*People v. Stakem,* 40 Cal. 599.) To justify the conviction of a defendant on a criminal charge he must not only be proven to have committed an offense, but the very offense charged in the indictment. (*People v. Fagan,* 98 Cal. 230, 33 Pac. 60; *People v. Maxwell,* 24 Cal. 14; *People v. Ribolsi,* 89 Cal. 492, 26 Pac. 1082; *People v. Avila,* 43 Cal. 196.)

Samuel H. Hays, Attorney General, for the State.

We may review errors of law in admitting evidence, and, in case of error, grant a new trial, but the question of fact, where there is any legal evidence, is for the jury. (*State v. Haverley,* 4 Idaho, 484, 42 Pac. 506; *People v. Vance,* 21 Cal. 400.) It is attempted to impeach the verdict of the jury in this case by the affidavits of some members of the jury and the affidavit of a third person, as to what other members of the jury had told him. That the verdict cannot be impeached in the manner here attempted is settled by *Griffiths v. Montandon,* 4 Idaho, 377, 39 Pac. 548, and *State v. Murphy,* ante, p. 183, 61 Pac, 462.

HUSTON, C. J.—The defendant was convicted of the crime of grand larceny in the alleged stealing of five head of cattle. The only evidence against the defendant is the finding in his possession of the hides of some of the alleged stolen cattle. Against this evidence defendant alleges that he bought said cattle, giving the time and circumstances under which the purchase was made. Earl McCullough, a witness for the defense, testified as follows: "My name is Earl McCullough, and I live at Falk's Store. I am a fruit and stock raiser. My age is twenty years. I am acquainted with defendant, and know where his slaughter-

house is in Payette, and was there about the twenty-fourth of October last, about noon. At that time I saw a slim, light-complected man, of middle age, who was a stranger to me. He was not on his horse at the time, but I suppose he was on horseback, as there were two horses there. I saw five head of cattle there, but I can't describe them. I noticed one bald-faced cow among them. They were mostly all dark-colored cattle. I heard some conversation between this man and the defendant at that time in regard to the selling of the cattle and about the price. Twenty-six dollars a head was agreed on, I believe. I saw the defendant pay this man some money—paper money, currency. I was there probably five minutes. After the defendant had his preliminary examination, he employed me to go out and see if I could see anything of this man; and I went over to Ontario, Nyssa, and up the river around Emmett, and around there. I guess I was around for nearly two weeks." Other witnesses corroborate the testimony of McCullough. We think the presumption arising from the possession of the hides of the alleged stolen animals by the defendant is fully overcome by the testimony of the defense. The testimony of McCullough bears the impress of truth. There is nothing in his statements that would lead an unprejudiced mind to believe that he was stating anything but the facts as he witnessed them. He does not, as a suborned or tutored witness would do, try to make his testimony strong by going into details. He simply states the facts as he saw them, and the cross-examination failed to shake or discredit him, and no effort was made to impeach him. The testimony of McCullough was corroborated by that of R. W. Jacobsen, which is as follows: "I reside on the Payette river, about two miles and a half above Payette town, and was living in that vicinity in October last. The defendant's slaughter-house adjoins my father's land, with the exception of a lane between it on the north. On the 24th of last October I saw between three and six head of cattle being driven to the slaughter-house, but I did not pay any particular attention to them. They were being driven by somebody—one man—but I did not see his face, to recognize him. It was not the defendant. I fix the date because I was scattering hay to dry, and finished up about 2

o'clock.   The man was driving down the river on the main-traveled road, next the foothills.   I should judge he was a quarter of a mile—maybe less—from the slaughter-house when I saw him.   He drove directly to the slaughter-house.   I did not notice where this man went to when he left the slaughter-house." Other testimony was offered in corroboration of the defense.

One of the grounds upon which defendant based his motion for a new trial is an attempt to impeach the verdict of the jury by the affidavits of certain members of the jury.   We wish to say, once for all, that we entirely disprove of this practice.   A man who will render a verdict involving the life or liberty of a fellow citizen, and then make an affidavit in which he admits his own perjury, is as unfit for a juror as he is for any other position in which the rights of a citizen are involved.   It is surprising that counsel will persist in loading the record with this kind of trash, when the recognition thereof has been so uniformly repudiated by all courts.   The overwhelming weight of authority is that the verdict of a jury cannot be impeached by the affidavits of individual jurors.

Objections are raised to certain instructions given and refused by the court, but we find no error in the instructions. The conclusion of the court is that the evidence, as the same appears in the record, is insufficient to support the verdict.   The judgment of the district court is reversed.

Quarles and Sullivan, JJ., concur.