(December 17, 1914.)

STATE, Respondent, v. WILLIAM C. JANKS, Appellant.

[144 Pac. 779.]

LARCENY—INFORMATION—POSSESSION OF STOLEN PROPERTY—RECENTLY STOLEN PROPERTY—INSTRUCTIONS.

1. Where the information charges three persons with receiving stolen property, without stating whether the receiving of the same was joint or several, and one of the defendants asks for and receives a separate trial; *held*, that said defendant is not prejudiced by such defect in the information.

2. Any incriminating inference to be drawn from the possession of stolen property is not a presumption of law but is a deduction of fact to be considered by the jury.

3. Unless the fact is undisputed, the question whether stolen property found in the possession of a person has been "recently" stolen should be left to the jury to decide like any other material fact. It is error for the court to instruct the jury that possession of stolen property immediately after the theft is sufficient to warrant a conviction, and especially so where the evidence does not show that the defendant was in the possession of the property immediately after the theft.

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. Chas. O. Stockslager, Judge.

Prosecution for receiving stolen property. Verdict and judgment of conviction. Defendant William C. Janks appeals. Judgment *reversed*.

W. P. Guthrie and J. C. Rogers, for Appellant.

"The inference arising from the possession of stolen property is said to be one of fact, and not of law. It never rises

to the dignity of a conclusive presumption." (*State v. Pomeroy,* 30 Or. 16, 46 Pac. 797; *State v. Hodge,* 50 N. H. 510.)

"Even the recent, exclusive, unexplained possession of recently stolen property constitutes a mere circumstance, to be considered by the jury." (*Cooper v. State,* 29 Tex. App. 8, 25 Am. St. 712, 13 S. W. 1011.)

"Possession itself, without evidence tending to show guilty knowledge, could have no tendency to establish guilt." (*Durant v. People,* 13 Mich. 351; *Commonwealth v. Phelps,* 192 Mass. 591, 78 N. E. 741.)

"There is a distinction between possession as evidence of larceny and possession as evidence of unlawful receiving. In the latter offense the possession is held to be no evidence of the guilt of the person receiving them." (10 Ency. of Evidence, 671.)

"But in no case will possession sustain the conviction, on a charge of receiving stolen property." (Wharton's Criminal Law, par. 985; Wharton's Criminal Evidence, 758; *People v. Chambers,* 18 Cal. 383.)

The jury in this case arrived at their verdict by illogically drawing conclusions from assumed and unproven facts, and by reason of the misdirection by the court in giving the law in its instructions and by erroneous rulings upon the admission of evidence. Where error is shown injury is presumed unless the contrary appears affirmatively. (Hayne New Trial and Appeal, Rev. ed., par. 287, p. 1608.)

J. H. Peterson, Attorney General, J. J. Guheen, T. C. Coffin and E. G. Davis, Assistants, for Respondents.

A particular ground of error cannot be urged for the first time on appeal. (*People v. Fitzpatrick,* 80 Cal. 538, 22 Pac. 215.)

Where the information charges three persons with receiving stolen goods without stating whether the receipt was joint or several, but one receipt can be proved, and if the persons receiving were several, but one defendant can be convicted. The failure to allege whether the receipt was joint or several, however, is not a ground for demurrer. (Sec. 988, Bishop's

New Crim. Proc., 2d ed.; *Commonwealth v. Slate,* 11 Gray (Mass.), 60; *State v. Smith,* 37 Mo. 58.)

The unexplained possession of recently stolen property is sufficient to warrant a conviction for receiving stolen goods. (*State v. Weston,* 9 Conn. 527, 25 Am. Dec. 46; *State v. Raymond,* 46 Conn. 345; *Davis v. State,* 50 Mass. 86; *Knickerbocker v. People,* 43 N. Y. 177; *State v. Guild,* 149 Mo. 370, 73 Am. St. 395, 50 S. W. 909; *Goldstein v. People,* 82 N. Y. 231; *Slater v. United States,* 1 Okl. Cr. 275, 98 Pac. 110; *Huggins v. People,* 135 Ill. 243, 25 Am. St. 357, 25 N. E. 1002.)

In Idaho, the possession of recently stolen property raises a presumption of guilt upon the part of the person in possession thereof, unless the circumstances are such as to show in themselves that such possession was innocent. (*State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034; *State v. Sanford,* 8 Ida. 187, 67 Pac. 492; *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033.)

TRUITT, J.—The defendant, William C. Janks, was convicted in the lower court of the crime of buying and receiving stolen property for his own gain, knowing the same to have been stolen, and was convicted and sentenced to imprisonment in the penitentiary for the term of not less than six months and not more than five years, and to pay the costs of the prosecution. From this judgment and from the order denying the motion for a new trial defendant appeals to this court.

The errors relied upon for the reversal of said judgment of conviction as presented by the brief of appellant are as follows:

"1st. The overruling of the demurrer to the information.

"2d. Overruling defendant's motion to advise the jury to acquit the defendant when the state rested, and refusing to so advise the jury.

"3d. Giving to the jury over defendant's exceptions erroneous instructions.

"4th. The insufficiency of the evidence to justify the verdict.

"5th. Errors in admission of evidence.

"6th. Error in overruling motion for a new trial."

The statute upon which this prosecution is based is sec. 7057, Rev. Codes, and reads as follows:

"Every person who, for his own gain, or to prevent the owner from again possessing his property, buys or receives any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding one thousand dollars, or by both such fine and imprisonment."

The charging part of the information is as follows:

"The said William C. Janks, Charley Janks, and J. S. Kirkbride, on or about the 18th day of November, 1912, in the county of Twin Falls, state of Idaho, did then and there wilfully, unlawfully, knowingly, and feloniously and for his own gain, buy and receive one red steer, branded half circle six on left ribs, and of the personal property of H. P. Larsen, and one white-faced cow, branded half circle six on left ribs, and of the personal property of said H. P. Larsen, said William C. Janks, Charley Janks and J. S. Kirkbride then and there well knowing the said steer and cow to have been stolen."

The first error named in the foregoing list of errors relied upon by appellant was not urged except as to one point, which is that the information charges three persons with receiving the property jointly, but if the property was not received jointly and one received it from another, then each receiving would constitute a separate offense and could not stand in the same information. It is claimed that the information should set out how these three persons received the property, that is, whether it was received by them jointly or severally. This point does not appear to have been raised by the defendant's demurrer to the information in the court below. The grounds for demurrer, as specifically stated therein, are that the information does not state facts sufficient to constitute a cause of action in this, that the information does not show that the property was stolen before it was received; that it does not show that the property had been

stolen within the jurisdiction of the court; and that it does not show who stole the property, or from whom the defendants received it. We do not think it necessary to pass upon the question of whether or not this objection to the information could have been raised by demurrer in the court below or not, for the record shows that it was not raised there, and we think it is not such an objection as could be heard in this court for the first time. Moreover, before the trial of the cause in the lower court, this defendant asked for and was granted a separate trial so that we fail to see how he was in any way prejudiced by this fault or ambiguity in the information. In order to convict the defendant of buying and receiving the property described in the information, the jury must have found that the crime charged was attributable to him individually. Counsel for appellant have not even suggested, either in the brief or by oral argument, that the defendant in the court below was in any manner prejudiced by this defect or ambiguity in the information. We think the contention as to this point is without merit.

Substantially the same question is presented by the second and fourth assignments of error. They both are based upon the insufficiency of the evidence to convict the defendant, and we think may for this reason be considered together in whatever we may feel called upon to say upon the question presented by them.

The third objection relates to alleged errors of the trial court in its instructions to the jury. These instructions are very long, being divided into thirty-three numbered paragraphs and covering thirty-three pages of the transcript. We mention this because we think it has some bearing upon the question as to whether a defective instruction or an erroneous instruction is cured by subsequent instructions correcting such defect or error. If there were only a few tersely stated principles of law given as instructions, there would be less chance for the jury to be confused or misled, if the law was not correctly or fully stated in one or more paragraphs of the first part of the instructions, although subsequently corrected, than where so many are given. The

appellant in the third specification of error argues that the instructions from one to eight, inclusive, were erroneous and prejudicial to the defendant.

The first of these instructions is as follows:

"Instruction No. 1: You are instructed, gentlemen of the jury, that the state must prove beyond a reasonable doubt all of the material allegations of the information which are as follows: First, that the property set forth in the information was stolen; second; that the defendant in this case purchased or received such property of his own knowledge knowing the same to have been stolen; and, third, that such property was purchased or received by the defendants as hereinbefore defined, in the county of Twin Falls, state of Idaho, at the time set forth and alleged in the information herein, to wit: on or about the 18th day of November, 1912: Regarding the first essential herein set forth, to wit: the fact that such property was stolen, it is not essential that the thief must have been convicted or that the name of the person from whom such property was stolen should be proven; and in this connection you are instructed that the larceny of such property, and consequently the fact that such property was stolen, may be proven by the unexplained possession of recently stolen property, this being a fact and circumstance from which the jury may infer that the property was in fact stolen. And you are further instructed that in determining the question of whether the property was stolen you have the right to consider the fact that the possession of recently stolen property is in law a strong incriminating circumstance tending to show such larceny, unless the evidence and the facts and circumstances proved show that such property came honestly into the possession of the one, the evidence may disclose having possession of the same; and you are therefore instructed that the possession of recently stolen property, the possession being unexplained, is a circumstance from which guilt may be inferred; this is especially true where the charge is larceny and is a circumstance you may consider in the charge in this case, in determining the guilt or innocence of the defendants."

It is urged by appellant that this instruction is erroneous in two particulars: (1) It does not correctly state the elements of the crime charged, and omits to mention the question of motive; and (2) because the court invades the province of the jury by that part of the instruction which says: "The larceny of such property and consequently the fact that such property was stolen may be proved by the unexplained possession of recently stolen property." It is elementary and trite to say that there must be a wrongful or wicked motive back of every crime of this character. This statute makes the buying or receiving of any personal property by a person, knowing the same to have been stolen, the motive or gravamen of the crime therein designated. In this instruction the court first assumes to tell the jury specifically what the state must prove in order to convict the defendant of the crime charged in the information, but wholly fails to mention one of the material elements of the crime. If the information had stated no more than this instruction specifies, it would not have stated a crime under the statute, and if· the proof at the trial had established the three propositions enunciated by the court beyond a reasonable doubt, it would not be sufficient to convict the defendant. In said section 7057, the crime specified is predicated upon the very element that this instruction omits to give. A person might buy or receive personal property, knowing the same to have been stolen, but unless he buys or receives it "for his own gain or to prevent the owner from again possessing his property," it is not a crime. Concerning the motive necessary to constitute the crime charged in this case, Bishop says: "Some of· the statutes require the receiving to be for the 'gain' of the receiver. But in the absence of any term of this sort, the motive of personal gain is not essential; it is enough, for example, that he·did it to aid the thief. . . . . Still the intent must be, in some way, fraudulent or corrupt." (2 Bishop, New Criminal Law, sec. 1138.)

Illinois has a statute similar to ours in all its essential provisions, and in *Aldrich v. People,* 101 Ill. 16, which was a

prosecution for receiving stolen property, this identical point was presented, and in passing upon it the court said:

"The intent, as in larceny, is the chief ingredient of the offense. Thus, where A authorizes or licenses B to receive property lost or stolen, and B receives the property from the thief knowing it to be stolen, with a felonious intent, he is guilty of a felony in receiving the property, notwithstanding the license. (Wharton, sec. 1891.)

"Under our statute there is another essential fact to be proven—that is, that the defendant, for his own gain, or to prevent the owner from again possessing his property, bought, received or aided in concealing stolen goods. There is no doubt, from the evidence in this case, in regard to the fact that the defendants knew the goods were stolen. Their knowledge is a conceded fact. It is also an undisputed fact that the stolen goods, in passing from the custody of the thieves to Morrow, the agent of the owners, passed through the hands, first, of defendant Isaacs, and, second, through the hands of defendant Aldrich. The question in the case is then narrowed down to this: Whether defendants received the goods for their own gain, or to prevent the owner from again possessing his property. This, in our judgment, is the turning point upon which the decision of the case must hinge."

In this case the judgment was reversed and the case remanded, not because the court failed to instruct as to the point in question but because the proof failed to show that the defendant received the property for his own gain. We think the court in the case at bar erred in omitting to include as one of the elements of the crime that the defendant must have bought or received the property for his own gain or to prevent the owner from again possessing it. But there are two reasons why this error did not prejudice the rights of the defendant, viz.: First, the court in instruction numbered nine clearly stated the three elements of the crime as specified in said sec. 7057, and alleged in the information, and charged the jury that in order to convict the defendant these three elements of the crime must be proved beyond a reasonable doubt; and, second, the testimony clearly proved that if de-

fendant took the property at all, he bought and received it, partly, at least, for his own gain.

In *People v. Morine,* 61 Cal. 367, it was held that, "It is not necessary that each instruction should fully state the law of the case, but any instruction may be helped out and explained by another on the same point; and in such a case the court will look to all the instructions *in pari materia* for the purpose of determining whether the law has been correctly given." In *State v. Marren,* 17 Ida. 766, 107 Pac. 993, after considering an instruction given in that case by the trial court, it is said: "Although the instruction referred to contains matter which should not have been given to the jury, we are, however, of the opinion that the appellant could have been in no way prejudiced by the giving of such instruction." And it has been held by this court in a number of cases that substantial prejudice must be shown in order to constitute reversible error. And unless that can be shown, the case will not be reversed for errors which fall short of that test. We do not think the error complained of in the first objection to the instruction under consideration could have been prejudicial to the defendant under the circumstances of the case and the evidence found in the record. But the second objection urged to said instruction, to the effect that the fact that said property was stolen may be proved by the unexplained possession of *recently stolen* property, presents a more serious question. In the first place, the use of the phrase *"recently stolen"* as applied to the property in question was not warranted by the evidence, and even if it was, it was not proper for the court to decide this matter. The question as to whether, if this property was stolen, it was *"recently stolen,"* should have been left to the jury to decide from the evidence in the case, because it has an important bearing upon the question of the guilt of the person found in possession of the stolen property. If the adverb "recently" does not have some bearing on the question of the guilt of the person who has received stolen property, why not just say *in the possession of stolen property?* Why add the limiting adverb as to time if it has no relevancy to the guilt of the

person accused? It will be found from an examination of the authorities relating to prosecutions for buying or receiving stolen property, that whether the property was recently stolen, or whether a long time has elapsed since the larceny, makes a very material difference in determining the guilty knowledge of the person having such possession. If the property in a few hours, or in a few days, after it was stolen from its owner, was found in the possession of a person, the presumption that he received it from the thief would usually be much stronger than if it was received weeks or months after the theft. In the case at bar, the time when this property was stolen, if it was stolen, is vague and uncertain. The owner of the property, H. P. Larsen, testified that he was present at the roundup or gathering of his cattle in the fall of 1912, and further said: "I think I had in this gathering the animals whose hides I discovered at this time." But he also testified that he had from 250 to 300 head of cattle. Now it is apparent that in gathering and looking over this number of cattle he might easily be mistaken about seeing these two cattle in the herd at the time he mentions. The hides of the cattle claimed to have been received and slaughtered by the defendant were mainly identified by the brand on them, so there is much uncertainty as to the actual time of the larceny if they were stolen. If the owner did not see them at the 1912 round-up, then the thief, if they were stolen, may have stolen them a year or two before they were delivered at the slaughter-house of the Robinson-Janks Packing Co.

*Goldstein v. People,* 82 N. Y. 231, is a case relied on to sustain the court's instructions in this case, to the effect that the possession of recently stolen property, unless explained, will warrant a conviction, but the facts were so different in that case from the facts in this case, that we do not think it sustains the point contended for by the state. In that case the court instructed: "That the possession of stolen goods *immediately* after the larceny, *if under peculiar and suspicious circumstances,* when there is evidence tending to show that some other person or persons stole the property, such possession not being satisfactorily explained, would warrant

the jury in convicting the accused of receiving stolen goods, knowing them to have been stolen.'' The italics in this instruction are ours for the purpose of distinguishing this instruction from the instructions under consideration in the case at bar.

The facts upon which this instruction was based were given in the opinion of the court as follows: ''It was proven by satisfactory evidence that the goods were the property of Morris and had been stolen from him by some persons other than the prisoners. The theft was at once discovered, and upon instant search they were found in a small room of which Bernard Goldstein had the right of temporary possession for a special purpose, adjoining a room occupied by himself and wife, and into which a door from their room opened.'' And we may gather what was meant by the phrase *''immediately after the larceny''* in said instruction from what the court further said in the opinion: ''If the goods came to the possession of the prisoners or either of them, it was within a very short time, an hour or two at most, after the larceny, and as early as 5 o'clock in the morning, and this, with other incidents which happened in its connection were of an unusual character, fully justifying in that respect the hypothesis submitted, of 'peculiar and suspicious circumstances.' '' But in this case there is very slight, if any, evidence in the record to support the hypothesis of ''peculiar and suspicious circumstances'' that was presented to the jury in that case.

But a more weighty objection to this part of the instruction is that the court plainly told the jury that, ''You are instructed that the larceny of such property, and consequently the fact that such property was stolen may be proven by the unexplained possession of recently stolen property, this being a fact and circumstance from which the jury may infer that the property was in fact stolen. . . . . You have the right to consider the fact that the possession of recently stolen property is in law a *strong* incriminating circumstance, tending to show such larceny . . . . and you are, therefore, instructed that the possession of recently stolen property, the possession being unexplained, is a circumstance from

which guilt may be inferred." And in the third instruction this point is further impressed upon the jury by the court as follows: "Possession of stolen property *immediately* after the theft is sufficient to warrant a conviction. . . . . And in this case if the jury *believe* from the evidence as herein defined, first, that the property was stolen, and further find that the defendant was possessed of such property *soon* after it was stolen, then such *possession* is in *law* a fact tending to show the guilt of defendant, and from which an inference may be drawn tending to show the guilt of the defendant if such possession remains unexplained." The italics are ours. We think these instructions were erroneous and prejudicial to the defendant. In fact, under these instructions, the jury could hardly do otherwise than find a verdict of guilty.

Thompson on Trials, 2d ed., sec. 2536, in discussing the rule as to the presumption arising from the possession of recently stolen property, says:

"This rule, it is perceived, is a branch of the law of *circumstantial evidence;* and the value of a rule which ascribes to a particular circumstance the character of conclusive evidence of guilt, unless rebutted or explained, may well be questioned under a system of trial which commits to the jury in every criminal case the conclusive power of judging of the existence of the criminal intent. The sounder view is, that it is better that twelve men, sitting in the jury box, should apply their collective experience in the affairs of everyday life to such a circumstance, in view of its surroundings, as shown by the evidence, and say whether a conclusion of guilt is to be drawn from it or not. If this view is correct, it must follow that a peremptory instruction, laying down the rule in the language in which it is formulated in the books, must have the effect of depriving them of that independent judgment of the facts, which the law, under our modern system of trial by jury, intends to give them. The sound view is that, whether the recent, unexplained possession of stolen goods is conclusive evidence that the possessor committed the larceny, is a question of fact exclusively for the jury."

In *People v. Chambers,* 18 Cal. 382, it was held that: "It is well settled that the possession of the fruits of a crime is a circumstance to be considered in determining the guilt of the possessor, but the authorities seem to hold that this circumstance is not of itself sufficient to authorize a conviction. . . . . There are many cases in which an explanation would be impossible; and in such cases to throw the burden of explanation upon the accused would be to slam the door of justice in his face. We think the true rule upon the subject is that laid down by Greenleaf in the section referred to. 'It will be necessary,' says he 'for the prosecutor to add the proof of other circumstances indicative of guilt in order to render the naked possession of the thing available toward a conviction.' "

The case of *Askew v. United States,* 2 Okl. Cr. 155, 101 Pac. 121, is a leading case on the question involved in the instructions that we are now considering, and as the point is so fully and ably discussed in the opinion in that case, we quote at length from said opinion as follows:

"The fifth assignment of error presented by appellant is that 'the court erred in its instructions to the jury in the following: "The unexplained possession, if there should be such unexplained possession, of recently stolen property, is *prima facie,* but not conclusive, evidence of his guilt." '

"Exception was taken to this charge of the court at the time it was given, and in view of the holding of this court in the case of *Slater v. United States,* 1 Okl. Cr. 275, 98 Pac. 110, in which the opinion was rendered by Chief Justice Furman, it is not considered necessary in presenting this case to do more than call the attention of the court to that case, which held: 'It is error to instruct a jury that the possession of property recently stolen raises a presumption against the party having such possession, which requires an explanation from him; this being a charge upon the weight of the evidence.'

"The case under consideration here is even stronger than that of *Slater v. United States,* for in the case at bar the court instructed the jury that the possession of recently stolen prop-

erty is *prima facie* evidence of his guilt, whereas, in the Slater case, the trial court in its instructions went no farther than to state that the possession of recently stolen property is a presumption against the party having possession. The court held in the latter case that: 'The effect of this instruction is to inform the jury that the possession of property recently stolen raises a legal presumption of guilt against the party having it in his possession, and that the law requires an explanation from him of such possession. We do not so understand the law. In the case of *Oxier v. United States*, 1 Ind. Ter. 91, 38 S. W. 332, Judge Lewis says: "The later and the sounder and better rule is believed to be that which makes the presumption, arising from the possession of recently stolen property, not a presumption of law, but of fact; in other words, an inference to be drawn or not, as the jury may determine in the light of all the evidence." '

"This court cites with approval in this connection the case of *Blair v. Territory*, 15 Okl. 550, 82 Pac. 653, and holds: 'The instruction complained of was upon the weight of the evidence, which is for the determination of the jury, and was therefore error.'

"It follows, therefore, if the court adheres to the rule laid down in *Slater v. United States*, and the rule therein enunciated by the court seems to be both forceful, and logical, that fatal error was committed by the trial court in giving the jury the instruction complained of under the head of fifth assignment of error, and that this case should be reversed and remanded."

But these authorities are only given to show the rule regarding this question adopted by other courts and the reason therefor, as set out in their opinions, for the question under consideration was before this court in *State v. Seymour*, 7 Ida. 257, 61 Pac. 1033, and in that case the court after considering some other alleged errors in the record said: "The only question remaining is, Was the possession of the animal by the defendant a felonious possession? The bare possession of property recently stolen is not conclusive evidence of guilt. Especially is this so of property of the kind involved in this

case." The property involved in that case was of the same kind as the property involved in this case. In *State v. Sanford,* 8 Ida. 187, 67 Pac. 492, the court said: "The first error assigned is as follows: 'The court erred in his charge to the jury in reference to the possession of recently stolen property—more particularly the words "is a guilty circumstance, and should be considered by you." ' A careful examination of the instruction to which this error apparently refers shows that the instruction was not erroneous. The language used is somewhat unfortunate, but the instruction conveyed to the jury, who could get no different idea therefrom, the rule of law that possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused may be inferred." But this case cannot be accepted as authority in support of the instructions under consideration, although it is referred to by respondent in its brief for that purpose. The court told the jury that under the evidence in that case the possession of recently stolen property was a circumstance from which the guilt of the accused may be inferred. But that is very different from telling the jury that, "the possession of stolen property immediately after the theft is sufficient to warrant a conviction," which the court did in the case at bar.

In *State v. Sanford, supra,* the instruction simply said the possession of recently stolen property was a *circumstance,* from which the guilt of the defendant might be *inferred.* The court did not tell the jury that such possession was "in law a fact tending to show the guilt of defendant," or that "possession of stolen property immediately after the theft is sufficient to warrant a conviction." But in this case the jury was instructed that it might *conclude* that the defendant was guilty from the fact of having in his possession recently stolen property. And every time the court used the phrase "recently stolen property" it was assuming a fact as established that should have been left to the jury to decide. The difference in the meaning of the words *inference* and *conclusion* is well known. The Standard dictionary defines these words as follows: "A *conclusion* is the absolute and necessary result of

the admission of certain premises; and *inference* is a *probable conclusion* toward which known facts, statements, or admissions point, but which they do not absolutely establish.''

Before a defendant can be convicted in a case like this, four things must be established to the satisfaction of the jury beyond a reasonable doubt: (1) That the property was stolen; (2) that either the thief delivered it to the defendant, or to someone else who delivered it to him; (3) That at the time the defendant received the possession of the property he knew it was stolen, or that it was received under such circumstances that any reasonable person of ordinary observation would have known that it was in fact stolen property; and (4) that he received it for his own gain or to prevent the owner from again possessing it.

The second and fourth assignments of error presented by appellant are based upon the insufficiency of the evidence to convict the defendant, and as we have heretofore stated in this opinion, these assignments of error may be considered together. But we do not deem it necessary in deciding the case to go into an extensive review of the testimony in the record as we think there was prejudicial error in the instructions which we have considered. However, we may say that the initial and vital point in order to convict the defendant, namely, that the property was *stolen,* has very meager support from the evidence. Karl Falk was the most important witness on this point in the case. He testified that twenty-three head of cattle were brought to the slaughter-yards of the Robinson-Janks Packing Co. on Sunday evening, November 17, 1912, by one Frank Dolen. The cattle were received by Falk, Charley Janks and J. S. Kirkbride. The defendant was not there when they were received. There is no evidence that Dolen had stolen these cattle, or that he had received them from the thief if they were stolen. Dolen never seems to have been charged with the larceny of this property, and he did not act like a guilty man so far as the record shows, for Falk says he saw him in the office of said packing company on December 7, 1912, which was about twenty days after he delivered these cattle to the packing company. It is only claimed that two

head of these cattle were stolen, and a number of different ways may readily be suggested to account for them being there without any criminal act or intent on the part of Dolen.

But without directly holding the evidence as to whether or not said property was in fact stolen insufficient to support the verdict of the jury, we think there was reversible error in the instructions of the court on the point that we have considered. The judgment must, therefore, be reversed and a new trial ordered.

Sullivan, C. J., concurs.