(No. 6366. February 24, 1937.)

STATE, Respondent, v. CLIFF DAVIS, Appellant.

[65 Pac. (2d) 1385.]

414

John D. Whitney and George Donart, for Appellant.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

GIVENS, J.—Appellant on a charge of grand larceny, was convicted of the theft of a Jersey cow belonging to Mr. and Mrs. Frank J. Miller, taken May 26th, 1935, from Crescent Drive, which is a road approximately on the rim of the first bench southwest of Boise, and found approximately a month later in the pasture of one Schrecongost about 8 miles from Emmett.

The facts of the case will appear more in detail in connection with appellant's assignments of error considered seriatim.

The first assignment of error challenges the correctness of instruction No. 21 which was as follows:

"If you believe from the evidence that any witness has wilfully sworn falsely in his testimony in this trial, regarding any material matter testified to by such witness, then the jury may totally disregard the testimony of such witness, except insofar as he is corroborated, to your satisfaction, by other and credible evidence, or by facts and circumstances proved on the trial."

because by this clause it delegated to the jury "the right not only to judge the weight and effect of testimony but to

determine under what circumstances it might entirely disregard the testimony of a witness.'' But the discrimination was properly left to the jury because certainly the court should not draw the distinction, and since the jury must be satisfied of the truthfulness of the testimony, not the court, *State v. McPherson,* 49 Ida. 687, 291 Pac. 313, and the instruction required that the false testimony to render it nugatory must be wilful and intentional and that it must relate to a material fact, it was correct. (*State v. Waln,* 14 Ida. 1, 80 Pac. 221; *Baird v. Gibberd,* 32 Ida. 796, 189 Pac. 56; *State v. Boyles,* 34 Ida. 283, 200 Pac. 125; *State v. Dong Sing,* 35 Ida. 616, at 631, 208 Pac. 860; *State v. Brassfield,* 40 Ida. 203, at 210, 232 Pac. 1; *State v. Muguerza,* 46 Ida. 456, at 463, 268 Pac. 1; *State v. Alvord,* 47 Ida. 162, at 178, 272 Pac. 1010.)

 Assignment of error No. 2 urges that instruction No. 8 placed upon appellant the burden of producing absolving explanatory evidence of (possession of recently stolen property) whereas if the State's evidence was such as to create a doubt as to the dishonesty of his possession, the defendant is entitled to an acquittal.

Instruction No. 19 admonished the jury to consider the instructions as a whole. In order therefore to get a proper perspective of instruction No. 8 it is necessary to read the two preceding instructions together, as follows:

"No. 6.

"The possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused may be inferred.

"No. 7.

"If you believe from the evidence, beyond a reasonable doubt, that the property described in the information was stolen and that the defendant was found in the possession of the property after it was stolen, then such possession is in law an incriminating circumstance tending to show the guilt of the defendant, unless the evidence and the facts and circumstances thereunder show that he may have come honestly in possession of the same.

"In this connection, I further instruct you that if you find from the evidence beyond a reasonable doubt that the

property described in the information was found in the possession of the defendant, then in determining whether or not defendant is guilty, you should take into consideration all of the circumstances attending such possession.

"No. 8. "

"Even though you find from the evidence that the defendant was in possession of recently stolen property, the burden of proof is not upon the defendant to establish by a preponderance of the evidence that he came honestly into the possession of such property.

"All that is required of the defendant is that he produce such evidence and to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of the guilt of the defendant."

*State v. Sanford,* 8 Ida. 187, 67 Pac. 492, first announced that the possession of recently stolen property is a circumstance, from which, when unexplained, the guilt of the accused may be inferred, which proposition has been reaffirmed in *State v. Bogris,* 26 Ida. 587 at 601, 144 Pac. 789; *State v. Jackett,* 45 Ida. 720 at 723, 264 Pac. 875; *State v. Yancey,* 47 Ida. 1 at 6, 272 Pac. 495.

The court therefore properly instructed as it did in instruction No. 6, and appellant cannot complain that the court instructed the jury as to what if anything could or should have been considered by it, exculpating the defendant from the inference above stated.

It is true as appellant contends, that it is sufficient if the whole evidence raises a reasonable doubt as to the dishonesty of his possession, or guilt because of possession, and that is what in effect was stated. The criticism is that the instruction required the defendant to produce exculpatory evidence, whereas the evidence produced by the State might create in the minds of the jury a reasonable doubt.

In instruction No. 7 the court advised the jury that the possession was incriminating "unless the evidence and the *facts and circumstances thereunder* show that he may have come honestly in possession of the same" (italics ours) which would include all of the testimony, State or defense, with

regard to possession. Further in the same instruction the jury were advised that in determining the guilt they *"should take into consideration all of the circumstances attending such possession."* And in instruction No. 8 itself, the court said: "All that is required of the defendant is that he produce such evidence and to such a degree of certainty as will, *when the whole evidence is considered, . . . ."* (italics ours). Clearly including all the evidence in the case, so no matter how slight the evidence produced by defendant if in addition to all the other evidence of the case, it raised a reasonable doubt, no unfavorable inference could be indulged by the jury. Appellant himself admitted to witnesses who so testified that he took the cows to Schrecongost in his trailer and there arranged for their being kept in the pasture, and thus had actual possession of them up till the time he left them with Schrecongost, and during pasturage, by reason of his agreement with Schrecongost, had constructive possession thereof. If an inference is to be drawn from the unexplained possession of recently stolen property, the jury must perforce have been instructed what might overcome this inference, and while the instruction might have more clearly stated the rule, the jury could not have been misled in the particular complained of by appellant. This feature of grand larceny has been considered by many courts and many authorities cited as bearing on the point herein are not controlling because the instructions there considered were so worded as to cast upon the defendant a burden greater than producing a reasonable doubt, nor do these authorities question the correctness of an instruction stating that a reasonable doubt may be raised by the evidence produced by defendant as well as all other evidence produced in the case, and the following authorities from this and other jurisdictions upon a careful analysis thereof show that when instructions No. 6, 7, and 8 are considered together, instruction No. 8 on the point involved here was not prejudicially erroneous. The instruction herein is more favorable to the defendant than that approved in *State v. Smith,* 30 Ida. 337 at 346, 164 Pac. 519, as follows:

"Many of appellant's assignments of error are directed against the instructions of the court as given and the refusal

to give requested instructions. We will confine this portion of the opinion to a discussion of instructions Nos. 11 and 16 as given by the court. Instruction No. 11 reads as follows:

" 'Possession of property recently stolen, if proven, is not evidence sufficient of itself to warrant a conviction. It is merely a circumstance tending to show guilt which taken in connection with other evidence is to determine the question of guilt. If, however, the jury believes beyond a reasonable doubt that the property described in the information was stolen, and was seen in the possession of the defendant soon after being stolen, the failure of the defendant to account for such possession or to show that such possession was honestly obtained is a circumstance tending to show his guilt; and the defendant is called upon to explain such possession, if such possession has been proved, in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts, if the evidence disclosed any such.' "

citing as supporting cases, *State v. Wright*, 12 Ida. 212-218, 85 Pac. 493 and *State v. Janks*, 26 Ida. 567, 144 Pac. 779. See, also, *State v. Jackett, supra, State v. Yancey, supra, State v. Allen,* 54 Ida. 459 at 462, 34 Pac. (2d) 45, and *State v. Brassfield, supra,* at 211.

Assignments of error Nos. 4 and 5 considered together purport to assign as error the admission of similar offenses, and that the prosecution was on an erroneous theory. Let us however see what the specific claimed errors and objections were. Taking up No. 5 first, three separate incidents are challenged; the first with reference to an examination of the witness Beason who was allowed, without objection on the part of appellant to testify that he owned and was in possession of a cow June 8th, 1935 (his home apparently being about two miles from the place at which the Wright cow was taken). Appellant then objected to further examination of this witness, whereupon the prosecution, in the absence of the jury, made an offer of proof, to which appellant's objection was sustained.

The next subdivision refers to the testimony of one Neal. These questions were asked:

"Q. And I ask you whether or not on that 30th day of May you lost that cow?

"Mr. DONART: That is objected to as being entirely immaterial. Now, that does not seem to me that would be material to this case, if it were direct evidence, and it certainly isn't rebuttal.

"Mr. MOFFATT: This is preliminary.

"(Discussion of counsel, off the record.)

"The COURT: Overruled, if it is tied up.

"Q. (By Mr. MOFFATT.) Did you lose a cow on the morning,—or, on *June* 30th?

"A. Yes.

"Q. And what sort of cow was that, Mr. Neal?

"A. She was a little cow; she was Guernsey and Durham.

"Q. And where did you find that cow?

"A. I found her about a month later. I was notified by the sheriff's office to go and look at two cows out on the Hill—"

Whereupon on objection of appellant the prosecution made an offer of proof out of the presence of the jury, to which appellant's objection was sustained.

Higgins on direct examination, as a witness for appellant, testified that defendant and another man came to his place about two miles from the limits of Boise City in the latter part of May or early June, with cattle which were placed in his pasture. He was cross-examined without objection from the appellant and it is this cross-examination which is now assigned as error in the third subdivision. There was no objection, no adverse ruling, and so no error. (*State v. Baker*, 28 Ida. 727, 156 Pac. 103; *Hurt v. Monumental Mercury Min. Co.*, 35 Ida. 295, 206 Pac. 184; *State v. Chacon*, 36 Ida. 148, 209 Pac. 889; *State v. Keyser*, 38 Ida. 57, 219 Pac. 775; *State v. Wilson*, 51 Ida. 659, 9 Pac. (2d) 497.)

■ Assignment of error No. 3 covers the testimony of one Weaver, who was called in rebuttal by the State and testified that he saw an automobile in South Boise about 12:30 on the morning of June 9th, 1935, and noticed the license number of the car and trailer (which were those of defendant) and that his attention was attracted to this because his neighbor had lost a cow. The State did not how-

ever undertake to show who this neighbor was or what cow had been lost. The only tie-up as to the Culver and Beason cows was on cross-examination of respondent's witnesses by appellant, and appellant's objection to the offer of proof on the part of the prosecution attempting to show larceny of the Beason cow was sustained.

With regard to the Culver cow, testimony had gone in in chief without objection on the part of appellant, that Culver's cow was found in the pasture where the Miller cow was found, defendant himself had told the sheriff that there were two cows in the pasture near Emmett, and went with the sheriff to see the cows. One of them was the Culver cow. The defendant had also told one of the deputy sheriffs about the Culver cow. There was evidence that the Culver cow was taken apparently the same night the Miller cow was taken. Thus the assignment is without merit for two reasons: In the first place, conceding that the testimony of Weaver who saw the car on the evening of June 9th in South Boise, should not have been admitted, the only tie-up occurred on cross-examination and defendant's own statements linked her with the Miller cow. (*Robinson v. State,* (Tex. Cr. App.) 48 S. W. 176; *State v. Phillips,* 160 Mo. 503, 60 S. W. 1050; *Autrey v. State,* 113 Ark. 347, 168 S. W. 556; *State v. Othick,* (Mo.) 184 S. W. 106; and see *Bailey v. State,* 69 Tex. Cr. Rep. 474, 155 S. W. 536.)

There was no evidence of any other similar offense not thus directly connected with the crime charged admitted, rendering necessary the discussion of the admission of similar offenses to show intent, nor do we pass thereon.

The last assignment of error challenges generally the sufficiency of the evidence to sustain the conviction. Appellant arguing that *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033, and *State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034, announced the rule that possession of recently stolen property unexplained is evidence of guilt, but when a reasonable explanation is given and there is no conflict of evidence in regard thereto and the witnesses not impeached, the defendant is entitled to an acquittal, and argues that the evidence here makes applicable the asserted holding in the Seymour case in that though:

" . . . . It might be urged that the testimony of Mrs. Davis standing alone that the animal had been purchased from a man by name of Mason, even though uncontradicted and unimpeached, is insufficient to meet the requirements of an explanation, but testimony of Mrs. Davis was further corroborated by that of Clare Higgins, for Mr. Higgins' testimony definitely established the existence of Fred Mason, the person from whom Mrs. Davis testified the defendant had purchased the Miller cow, and there is another explanation furnished by the sheriff's testimony more convincing, more logical and more reasonable than the explanation to be furnished by any witness who could have been produced by the defendant. The sheriff admitted that before he even knew this cow had been stolen or suspected the defendant of any larceny of this animal, the defendant told him he had this cow and told him where he had bought it. That is not the action of a guilty man, and we submit that the explanation furnished in the light of the decision in both the Seymour and Marquardsen cases entitles this defendant to an acquittal."

The rule and the application of the rule in the Seymour case has been applied by this court at different times, not without some confusion, as will appear from an examination of *State v. Marquardsen, supra, State v. Sanford, supra,. State v. Collett & Ireland,* 9 Ida. 608, 75 Pac. 271, *State v. Seymour,* 10 Ida. 699, 79 Pac. 825, *State v. Janks, supra, State v. Curtis,* 29 Ida. 724, 161 Pac. 578, and *State v. Sullivan,* 34 Ida. 68, 199 Pac. 647, 17 A. L. R. 902.

From these cases a fair statement of the law as distinguished from a mere application of the rule to the facts of a particular case is found in *State v. Curtis, supra,* at page 733:

"In *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033, this court held that where a reasonable explanation of possession of stolen property is given and there is no conflict of evidence in regard thereto, and the witness is not impeached, the jury should have acquitted. In that case the defendant's statement that he bought the horse was corroborated by another apparently disinterested witness. In this case the defendant is corroborated by witnesses Sullivan and Baker only to the extent of proving that he wanted to see his lawyer

after receiving the money. This fact does not of itself prove either guilt or innocence. It is a question of reasonable inference. . . . . It is true that the state must prove the guilt of a defendant beyond a reasonable doubt. That is a question in the first instance for the jury, which sees the witnesses' and hears the testimony. In a case where the question is whether the defendant's explanation of his possession of the fruits of a crime is reasonable, this court is not justified in substituting its opinion for that of the jury unless it finds that the defendant's explanation was so clearly satisfactory that it was unreasonable of the jury to refuse to give it credence.''

and a distinguishing feature between the cause herein and *State v. Sullivan, supra,* is that therein the possession was not exclusive and herein it is.

▉ The testimony in the case at bar shows the Miller cow was taken between the evening of May 26th from where she was tied by Mr. Miller to a post near Crescent Drive, and the morning of the 27th, when Mrs. Miller went to milk her. There was evidence: that Miller had not sold the cow; of tracks of the wheels of a trailer and indications that the end gate or rear of the trailer had been let down near the point where the cow had been tied; that the tracks or imprint of the tires of the trailer were traced some distance; that there was a peculiarity in the tread of one of these tires, and this peculiar tread was similar to the tread of a tire admittedly from appellant's trailer, introduced in evidence. True the tire was a common kind, but there was also evidence that the last Ford car (the trailer had been made from a Ford) to use this kind of tire was made in 1925 or 1926, and the prosecution was in 1935, and that ten years had elapsed is a circumstance which the jury could consider as indicating that tires of this kind had probably decreased in number. The testimony also shows the Miller and Culver cows were brought to Schrecongost's place the morning of May 27th, by defendant and his wife for pasturage; that the cows remained there until after Miller in company with the sheriff had looked at them a little less than a month after they were taken. There was also testimony that when appellant was asked from whom he secured the cows he hesitated before

recalling the name of Mason, and was unable to tell where he lived except generally in Boise. There was evidence that no such person as Mason lived in or about Boise. The sheriff testified that the defendant told him that he and his wife stayed the night of May 26th in a hotel in Emmett. Appellant however introduced evidence by a young woman employed by him and his wife that he and his wife were at their home near Boise the night of the 26th and left early the morning of the 27th. Appellant's wife also testified they were in Boise on the night of the 26th, and there is further contradiction in that there was testimony that appellant and his wife were at Yensen's place at 9 A. M. with the cattle and that thereafter they went to Schrecongost's place with the cows, but Schrecongost testified they came to his place at about 8:00 A. M. Mrs. Davis testified they bought the cow from Mason when his car was broken down at New Plymouth, they having left Boise at about 5:00 A. M., and they returned from near New Plymouth with the cattle to the Schrecongost place near Emmett. There was testimony by Mrs. Davis and Mrs. Bosteder that they were at Mrs. Bosteder's at noon on the 27th. Mrs. Knox however testified that they came to the Russell Hotel at about 8:00 A. M. the 27th and took a room for the day, and left about 6:00 that evening. The whereabouts of appellant the night of May 26th was very important and not collateral.

The jury was entitled to take into consideration the extent to which Mrs. Davis was able to identify Mason and his truck, and the price paid for the Wright and Culver cows, being $75 for both, and that no receipt was given or bill of sale received.

The record thus discloses facts and circumstances in the evidence sufficiently distinguishing the Seymour and Marquardsen cases, *supra,* and makes applicable the statements of the court in *State v. Ireland,* 9 Ida. 686, 75 Pac. 257, leading to the conclusion that there was sufficient evidence to justify the verdict of the jury, and no prejudicial error appearing, the judgment is affirmed.

Morgan, C. J., and Ailshie, J., concur.

HOLDEN, J. (Dissenting).—There are two important questions presented on this appeal: First, was the possession of the Miller cow by the appellant, felonious? Second, did the admission of "evidence tending to show other larcenies wholly independent from the one charged in the information," constitute reversible error?

On the first question, the material facts and circumstances in the case at bar are identical with those in the case of *State v. Seymour*, 7 Ida. 257, 61 Pac. 1033. In the Seymour case, as in the instant case, possession of the animal alleged to have been stolen was admitted. Seymour testified that he employed one Williams to purchase livestock for him and to drive the livestock so purchased to his place of business or slaughter-house; that the stolen animal was delivered by Williams to him and that he paid Williams for it; a man named Bruce testified that he was present when "Williams purchased the animal"; Williams, from whom Seymour claimed to have purchased the stolen animal, was not present at the trial, nor does it appear that Seymour either took a receipt from or was given a bill of sale by Williams. In the case at bar, Mason was not present at the trial and appellant did not obtain a receipt nor get a bill of sale from Mason. So that in the Seymour case, Williams was just as much an imaginary or fictitious person as it is contended Mason is in the instant case. Moreover, in the Seymour case, it was shown that at his preliminary hearing Seymour gave bail for his appearance at the next term of the district court, that he fled and did not appear and that his bail was forfeited; that a reward was offered for his apprehension and that he was subsequently arrested, tried, and convicted, which conviction this court reversed. Whereas, in the case at bar, appellant did not flee; on the other hand, when he learned that the officers were looking for the Miller and Culver cows, and at a time when the officers did not know where they could be found, appellant told the sheriff where they were. Furthermore, and as above stated, Seymour testified that "Williams" was employed by him for the express purpose of purchasing livestock for him, and that he, Seymour, paid "Williams" (his own employee) for the stolen animal. It is more damaging that appellant failed to produce Mason, practically a

stranger, at his trial, than that Seymour failed to produce "Williams," his own employee, at his trial? In both cases, the Seymour case, *supra,* and the instant case, the defendants, respectively, admitted had possession of recently stolen property. Seymour explained his possession by testifying that he purchased from his own employee, "Williams," the animal he was charged with having stolen, and in the instant case, appellant, although he did not testify, explained his possession of the animal he is charged with having stolen by showing that such animal was purchased from a virtual stranger named Mason. Neither Seymour nor appellant produced the seller.

In the course of the discussion of the law applicable to cases involving the possession of recently stolen property, it is stated in the majority opinion that "a fair statement of the law as distinguished from a mere application of the rule to the facts of a particular case is found in *State v. Curtis, supra* (29 Ida. 724, 161 Pac. 578), at page 733." In that case, it appears Curtis was charged with and convicted of the crime of presenting for payment to the county treasurer of Blaine county, certain false and fraudulent claims. The claims were based upon certain allegedly false and fraudulent bonds. Curtis was not charged with the larceny of the bonds. He was charged with presenting false claims based upon them. And in a further discussion of the law applicable to cases involving the possession of recently stolen property, it also is stated in the majority opinion that "a distinguishing feature between the cause herein and *State v. Sullivan, supra* (34 Ida. 68, 199 Pac. 647, 17 A. L. R. 902), is that therein the possession was not exclusive and herein it is." In the Sullivan case, *supra,* Sullivan and others, hoboes, were charged with and convicted of the crime of burglary. The goods were found in a hobo camp where all the defendants happened to be at the time the officer found the goods. This court, in that case, said:

"In the case at bar, all of the defendants were tried together and convicted of burglary in the first degree, notwithstanding the fact that a part of them had asked for a separate trial. The record wholly fails to connect some of these defendants with the possession of the goods alleged to

have been stolen, or with any of the articles taken from this camp and offered as exhibits in the case, further than to show that all of the defendants, together with one Murphy, who has not been apprehended, were stopping at this camp, which seems to have been a common rendezvous for 'hoboes' at the time of their arrest. The general rule that the possession of stolen property is evidence of guilt is limited by the rule that to warrant an inference of guilt it must be shown that the possession is personal, and that it involves a distinct and conscious possession by the accused.''

It is clear that what this court held in the Sullivan case, *supra,* is merely this: That it would not (and it did not) affirm the conviction of a defendant charged with and convicted along with others of the crime of burglary, where the evidence failed to show ''a distinct and conscious possession'' of recently stolen goods by such defendant.

And an attempt is made in the majority opinion to ''connect'' or ''link'' appellant with the theft of a cow owned by Culver as well as with the theft of the Miller cow, based upon testimony indicating that the Culver cow was stolen on the same night the Miller cow was taken, to wit, May 26, 1935, and testimony that appellant's car was seen standing on Broadway, one of the principal streets of Boise, on the night of June 8th, 1935 (there is no evidence, however, that appellant was in the car), some 13 days after it is claimed the Miller and Culver cows were stolen, and testimony that one of the tires on appellant's trailer was a ''thirty by three and a half'' Goodyear Pathfinder, and that one of the tracks made in the dust by a trailer used to haul the Miller cow away was similar to the tread of the said Goodyear Pathfinder tire taken from appellant's trailer and admitted in evidence. I confess that I do not understand just how the fact, if it be a fact, that the Culver and Miller cows were stolen on the same night, and that appellant's car was seen standing on Broadway some 13 days later, and that one of the tracks made in the dust, as above stated, appeared to be similar to the tread of said Goodyear Pathfinder, sufficiently serve to ''connect'' or ''link'' appellant with the larceny of either cow, particularly in view of the uncontradicted evidence that ''there are quite a few of them (Goodyear Pathfinders)

sold,'' thus making it largely a matter of guess and conjecture as to whether it was the Goodyear Pathfinder tire owned by appellant that made the tracks in the dust, or some other Goodyear Pathfinder tire owned by any one of *quite a few* other people.

Upon the second trial, apparently for the purpose of contradicting, by circumstantial evidence, the positive testimony given in behalf of appellant to the effect that he had purchased the Miller cow from a man named Fred Mason, by attempting to show that he, Mason, was a creature of appellant's imagination, a general delivery clerk in the Boise Post Office testified in behalf of the State that he did not *remember* delivering any mail to a Fred Mason during the year 1935. In a town the size of Boise, many people get their mail at general delivery; therefore, it would be quite impossible for a general delivery clerk to remember the name of every person so receiving mail, unless we clothe the witness with supernatural powers, and there is nothing in the record giving the slightest hint that the witness is so endowed. Then, and for the same purpose, a deputy sheriff testified that he had checked the post office at Eagle, Star, Ustick, and Kuna, and that there was no record of any mail having been delivered to a Fred Mason. Appellant objected to that testimony, before it was given, upon the ground that the record, if any, was the best evidence, which objection was overruled. If a record of mail deliveries was kept at the towns above named (which is not probable, because the record here fails to show such a record was kept), then the record was the best evidence, but whether a record was, or was not kept, the testimony of the deputy sheriff was mere hearsay and, consequently, inadmissible. It was also testified in behalf of the state that during the year 1935 drivers' licenses had been issued to but two persons named ''Fred Mason''; that one was a probate judge at St. Anthony and the other a farmer at Bonners Ferry, but the record in that connection also shows that registration for drivers' licenses was not made nor required until July 1, 1935, more than a month after the alleged larceny of the Miller cow. Another witness testified in behalf of the State (Chief Clerk of the Motor Vehicle Department) that the records of the department showed that

the only person by the name of Fred Mason in whose name a motor vehicle was registered, was the above-named Fred Mason residing at Bonners Ferry, but upon cross-examination, that witness also testified that the Governor, by extensions, had extended the time within which registrations would be required, to the 31st day of May, 1935, that is to say, registration of motor vehicles was not required until five days after the alleged theft of the Miller cow. Is that hearsay, uncertain, negative, circumstantial, evidence sufficient to contradict the positive testimony that appellant purchased the Miller cow from Fred Mason?

Turning now to the second question: Did the admission of the "evidence tending to show other larcenies wholly independent from the one charged in the information," constitute reversible error? The record before us shows that the case at bar was tried twice in the district court; that the first trial occurred in December, 1935, with the result that the jury disagreed and was discharged; that the case was next tried in February, 1936; that upon the first trial Oliver A. Culver, Neal Scott, and Carl Beeson did not testify, but that on the second trial they did testify. Upon the second trial it was testified that Culver's cow apparently was stolen on the same night the Miller cow was taken; that Neal Scott "lost" his cow on May 30th, 1935, and that Carl Beeson's cow was stolen June 8th, 1935. Did the admission of such evidence constitute prejudicial error? That, as a matter of fact, it actually did prejudice the minds of the jury sufficiently to induce it to find the appellant guilty, is established beyond any doubt by reason of the fact that, upon the first trial, in the absence of that evidence, the jury disagreed, and upon the second trial, by the use of that evidence, appellant was convicted, showing very clearly and conclusively the State could not have convicted appellant without that evidence. But appellant having made no objection to that evidence, is this court under any duty and does it possess the power to protect the fundamental rights of one accused of the commission of a crime, to the end that such person shall have a fair and impartial trial? In a case identical with the case at bar (*State v. Blank*, 33 Ida. 730, 734, 197 Pac. 821), where "counsel for appellant took no proper excep-

tions,'' this court reversed the judgment of conviction and in doing so, rested its opinion upon *State v. Garcia*, 19 N. M. 414, 143 Pac. 1012 (on rehearing), quoting therefrom, so far as the above stated point is concerned, as follows:

''There exists in every court . . . . an inherent power to see that a man's fundamental rights are protected in every case. Where a man's fundamental rights have been violated, while he may be precluded by the terms of the statute or rules of appellate procedure from insisting in this court upon relief from the same, this court has the power, in its discretion, to relieve him and to see that injustice is not done. The restrictions of the statute apply to the parties, not to this court.''

In a discussion of the second question, respondent frankly states in its brief that:

''The state prosecuted this case on the theory that appellant was engaged in systematic and continuous cattle stealing, and that the Miller theft is only one of a chain of thefts,''

and upon that theory it was contended in the trial court, and urged here, that evidence of other alleged thefts was admissible, for example, the alleged theft June 8, 1935, of a cow owned by Carl Beeson, and the alleged theft May 30, 1935, of a cow owned by Neal Scott (in all about six head of cattle, involving six alleged separate and independent larcenies), it being insisted in the lower court and on this appeal that evidence of larcenies, other than that alleged in the information, is admissible under the rule announced by this court in *State v. Emory*, 55 Ida. 649, 46 Pac. (2d) 67, hereinafter examined. The defense was to the effect that appellant was engaged in the business of buying cattle and that he bought the Miller cow in the usual course of business from a man by the name of Fred Mason. It was insisted by appellant in the trial court and contended here that ''evidence tending to show other larcenies wholly independent from the one charged in the information is inadmissible and its admission constitutes reversible error.'' It is needless to say that the state is bound by the theory upon which it prosecuted appellant in the trial court.

This court passed upon that question in the well considered case of *State v. Blank, supra.* In that case, Blank was charged with the larceny of a colt, and during the course of the trial, evidence was admitted that Blank "had committed larcenies other than and independent of the one charged in the information." It was held to be reversible error. Mr. Justice Budge, in a very able opinion, concurring specially, said, among other things:

"Furthermore, the state was permitted, in flagrant violation of every known rule of evidence, to introduce proof tending to establish that appellant came into possession of the sorrel mare (a mare which had foaled a black colt answering the description of the colt alleged to have been stolen) wrongfully, and that he (Blank) had committed larcenies other than and independent of the one charged in the information. . . . . The rule is well established that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is inadmissible."

In another, and later, well considered case (*State v. Garney,* 45 Ida. 768, 265 Pac. 668), this court, speaking through Mr. Justice Budge, held that:

"The general rule is, that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon trial, must be excluded."

And in the very recent case of *State v. Machen,* 56 Ida. 755, 58 Pac. (2d) 1246, this court, again speaking through Mr. Justice Budge, approved and strongly adhered to the rule announced in *State v. Garney, supra.*

As hereinbefore pointed out, the state, in support of its contention that evidence of other independent larcenies is admissible, relied in the trial court, and relies in this court, upon *State v. Emory, supra.* In that case, Emory was charged with the crime of asking for and receiving a bribe from one Rose Sage. The trial court admitted evidence of

bribes claimed by the state to have been received by Emory at times and from persons other than charged in the indictment, as showing a general design and system on the part of Emory to ask for and receive bribes under like or similar circumstances with those alleged in the indictment, under the theory that if Emory had or practiced a general system of asking for and receiving bribes, it would be more probable that he had asked for and received a bribe from the said Rose Sage, as charged in the indictment; and this court held that the admission of such evidence did not constitute prejudicial error. It was clearly established that Emory had asked for and received bribes from persons other than Rose Sage, under the same kind of agreement as that made with Rose Sage. To be more explicit, it was charged in the indictment, and proved upon the trial, that Emory had asked for and received a bribe from the said Rose Sage upon an agreement or understanding that he would protect her in the unlawful operation of her hotel business. And then the trial court admitted evidence that Emory had asked for and received bribes from persons other than Rose Sage, under an agreement that, in consideration of the payment of bribes, Emory (a police officer of the city of Boise) would also protect such other persons in the unlawful operation of certain businesses. And this court held, as above stated, that the admission of evidence that Emory had made agreements with other persons, identical with the agreement made with Rose Sage, under which such other persons had paid, and Emory had received, bribes, for protection, did not constitute reversible error. It is at once apparent that the facts in the case at bar do not bring it within the rule announced in the Emory case, *supra*. On the other hand, it is clear that such facts do bring the instant case within the rule laid down in *State v. Blank, supra*.

To summarize: on the question of fact as to whether the possession of the Miller cow by appellant was felonious, I have fully set forth all the testimony in the record, both the hearsay and the negative, which might, in any way, be said to contradict the positive evidence that appellant purchased the Miller cow from Fred Mason. And as to the law, the majority opinion recognizes the confusion in the decisions of this court on the question of the sufficiency of an

explanation of possession of recently stolen property. For example: *State v. Ireland* (a grand larceny case), 9 Ida. 686, 692, 75 Pac. 257, holds that: "The common defense, in such cases, is the purchase of the property stolen from an unknown person, and the jury are the judges of the weight to be given to such evidence, and we think they gave it in this case the full weight it deserved." While on the other hand, in *State v. Seymour, supra* (also a grand larceny case), this court said that Seymour "explained his possession of said animal by his own testimony and that of the witness Bruce; and, if the facts as stated by himself and witness Bruce are true, the defendant is not guilty of the crime of which he was convicted," and held that "where a reasonable explanation is given, and there is no conflict of evidence in regard thereto, and the witness is not impeached, the jury cannot arbitrarily ignore such evidence." In the case at bar there is neither impeaching nor conflicting evidence, other than the hearsay, negative, uncertain, "circumstantial," evidence hereinbefore set forth, whereas in the Seymour case, *supra,* it was shown that he fled, in regard to which this court said: "While the flight of one accused of crime is very generally regarded as an evidence of guilt, it has never been held as conclusive." On that phase of the instant case (possession of recently stolen property), the real question presented here is, May a jury ignore positive evidence of the purchase of the Miller cow (not contradicted by direct evidence), and convict the appellant upon hearsay, very doubtful, extremely uncertain, "circumstantial," evidence? Evidence which vaguely, if at all, contradicts the positive evidence that appellant purchased the Miller cow from Mason. If so, then the Seymour case, *supra,* and like cases ought to be reversed, or to say the least, modified. But no matter what view one may take of this case so far as the question of the sufficiency of appellant's explanation of the possession of the cow in question is concerned, there remains for determination the important and decisive question (which the majority decline to pass upon) as to whether the admission of evidence of other larcenies (excluding the admission of evidence in regard to the Culver cow), in no way connected with the

larceny of the Miller cow, constitutes reversible error. If not, then *State v. Blank, State v. Garney,* and *State v. Machen, supra,* ought to be reversed. If so, then the judgment of conviction in the case at bar ought to be reversed.