725 P.2d 115

STATE of Idaho, Plaintiff-Respondent,

v.

Melvina Hazel MAJOR, Defendant-Appellant.

No. 15850.

Supreme Court of Idaho.

July 30, 1986.

Thomas W. Callery, Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Defendant-Appellant Melvina Hazel Major, an enrolled member of the Nez Perce Tribe of Indians, was convicted of grand theft by possessing stolen property in violation of I.C. §§ 18–2403(4) and 18–2407(1)(b)1. The items allegedly stolen were recovered from a location within the Nez Perce Indian Reservation, and from a pawn shop in Lewiston, outside the reservation. The item recovered from the pawn shop was located after Major had been charged and after the district court had denied Major's motion to dismiss for lack of jurisdiction.

The Nez Perce Tribe previously had enacted a law and order code which includes the offense of receiving stolen property. Major was charged with violating the Nez Perce tribal law and order code for the same incident which led to the state charge.[1]

Prior to trial, and prior to the filing of the amended information which alleged the possession of the stolen property at the pawn shop, Major moved the district court to dismiss for lack of jurisdiction. The district court ruled that the Nez Perce tribe by resolution had granted the state concurrent jurisdiction over the offense involved, and accordingly denied the motion to dismiss. The amended information was filed subsequently.

Major appeals her conviction, asserting the state lacked jurisdiction over the crime of possession of stolen property with its locus inside the reservation. As developed below, we hold that (1) the jury may have convicted Major solely for the possession which occurred on the reservation, and (2) the state lacked jurisdiction over this crime inside the reservation. Consequently, we must reverse the conviction and remand for a new trial concerning only that property allegedly possessed outside the reservation.

I.

In the initial information, Major was charged with grand theft by possessing stolen property on the Nez Perce Indian

1. Because the state and the tribe are separate sovereigns, charges by both concerning the same crime do not constitute double jeopardy.

*Abbate v. United States*, 359 U.S. 187, 193–94, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959).

Reservation. Prior to trial, pursuant to I.C.R. 7(e), the state amended the information to include the possession of stolen property both on the reservation and off— one item of property allegedly possessed by Major, a VCR, having been recovered from a pawn shop in the City of Lewiston. The state conclusorily suggests without elaboration or citation to authority that "[s]ince the crime Major was charged with at the time of her jury trial was charged to have been committed in Lewiston, outside the boundaries of the Nez Perce Indian Reservation, in addition to being committed on the reservation, the state submits that jurisdiction was properly in the state courts." Respondent's Brief, pp. 4–5. In other words, in the state's view, any error as to jurisdiction over an Indian charged with possession of stolen property in Indian country (a designation which includes reservation lands)[2] would be harmless, as the state had jurisdiction over the offense by virtue of the possession occurring outside Indian country. *See, e.g., DeCoteau v. District County Court,* 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 1084 n. 2, 43 L.Ed.2d 300 (1975) (states generally have their normal jurisdiction over Indians outside Indian country); *Odenwalt v. Zaring,* 102 Idaho 1, 3, 624 P.2d 383, 385 (1981).

In equally conclusory fashion, Major replies with a two-part argument. First, suggests Major, this Court must decide whether the state had jurisdiction over Major for the alleged crime committed inside the reservation, because the jury's general verdict does not indicate "if the jury found Major guilty of possessing stolen property inside or outside the Reservation territory, or both." Appellant's Reply Brief, p. 3.

Second, Major asserts that the information was improperly amended under I.C.R.

7(e), since the alleged possession occurring in Lewiston was an "additional" and "different" offense. I.C.R. 7(e) provides for the district court to "permit ... an information ... to be amended at any time before the prosecution rests *if no additional or different offense is charged* and if substantial rights of the defendant are not prejudiced." (Emphasis added.) If this assertion is correct, then Major was charged with two offenses under the same count, a pleading defect referred to as "duplicity." W. LaFave and J. Israel, *Criminal Procedure* § 19.2(e), p. 457 (1984) (hereinafter *Criminal Procedure).* As a consequence, the state would have violated I.C. § 19–1501 *et seq.,* since Major received no separate arraignment on what she argues was the second offense. *See State v. Farris,* 5 Idaho 666, 670, 51 P. 772, 773 (1895) (preliminary hearing required on each offense charged). Further, Major would have been prejudiced as to any conviction, since the jury might have convicted her only for the offense for which she had no arraignment. *See Criminal Procedure, supra,* § 19.2(e), p. 457 ("Duplicity can result in prejudice to the defendant ... in limiting review on appeal....").

These arguments raise two difficult questions which the parties have not fully addressed: (1) Was the charge of possession against Major properly considered one or two offenses? (2) If it was properly considered one offense, does this fact, coupled with the fact that the alleged possession partially occurred off the reservation, mean that any error as to jurisdiction over Major within the reservation was harmless? We will address each question in turn.

---

**2.** 18 U.S.C. § 1151 defines Indian country:

Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) *all land within the limits of any Indian reservation under the jurisdiction of the United States Government,* notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the

borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same. (Emphasis added.)

The Nez Perce Indian Reservation is "Indian country."

Whether a course of conduct constitutes one offense or several can be a troublesome question.[3] The distinction is important: to charge a defendant with two offenses when only one was committed violates the defendant's right against double jeopardy, U.S. Const.amend. V, Idaho Const. art. 1, § 13; conversely, to charge a defendant with one offense when more than one was committed can prejudice the defendant "in the shaping of evidentiary rulings, in producing a conviction on less than a unanimous verdict as to each separate offense, in sentencing, in limiting review on appeal, and in exposing the defendant to double jeopardy." *Criminal Procedure*, § 19.2(e), p. 457.

Whether a course of criminal conduct should be divided or aggregated depends on whether or not the conduct constituted "separate, distinct and independent crimes." *State v. Hall*, 86 Idaho 63, 69, 383 P.2d 602, 606 (1963). This inquiry requires consideration of the circumstances of the conduct, *see State v. McCormick*, 100 Idaho 111, 115–16, 594 P.2d 149, 153–54 (1979) (Where act of burglary was completed before act of rape, these were separate criminal acts.); *Hall, supra*, 86 Idaho at 75, 383 P.2d at 610 (Where robbery was completed before murder committed, these were separate acts.), and consideration of the "intent and objective of the actor." *In re Ward*, 64 Cal.2d 672, 51 Cal.Rptr. 272, 275, 414 P.2d 400, 403 (1966), *cert. denied*, 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147. The latter are of particular importance in cases of crimes of possession, which involve knowledge or awareness of control over something rather than an act or omission to act. W. LaFave and A. Scott, *Handbook on Criminal Law* § 25, p. 182 (1972) (hereinafter *Criminal Law*). In the context of deciding the propriety of aggregating several small larcenous acts into one charge of grand larceny,[4] this Court

established a test accounting for the above considerations, which we adapt to present purposes: were the items possessed as a part of "a single incident or pursuant to a common scheme or plan reflecting a single, continuing [criminal] impulse or intent...." *State v. Lloyd*, 103 Idaho 382, 383, 647 P.2d 1254, 1255 (1982) (unanimous decision).

Applying this test to the instant facts, we are convinced that Major committed but one offense of possession of stolen property. The property was stolen at the same time from one individual. R., Vol. 1, pp. 220–59. On the same day, Major and her associates transported all of the stolen property to Lewiston, pawned one item there, and proceeded to the reservation where they were arrested. *Id.* She allegedly possessed the various items, including the pawned item, as a part of "a single incident" and "pursuant to a common scheme or plan reflecting a single, continuing [criminal] impulse or intent...." *Lloyd, supra*, 103 Idaho at 383, 647 P.2d at 1255. *See United States v. Edmonson*, 659 F.2d 549, 550 (5th Cir.1981), ("Since various items of mail stolen at the same time were in the defendants' 'possession as the result of one set of circumstances, that is, one theft [the possession thus constitutes] only one offense, and the defendant[s] could be convicted of only one offense.'"); *State v. Flaherty*, 576 P.2d 31, 32 (Or.App.1978) ("Possession of two different drugs at the same time and place constitutes a single offense."); *cf. Avilia v. State*, 278 So.2d 298, 298–99 (Fla.App.1973) (Where the defendant received four items of stolen property (a crime related to but not identical with simple possession of stolen property), and the property was received "at the same time, in the same place, under the same circumstances and with the same intent," there was but one offense

---

**3.** I.C. § 18–109 defines an offense as "an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death. 2. Imprisonment. 3. Fine. 4. Removal from office; or 5. Disquali-

fication to hold and enjoy any office of honor, trust or profit in this state."

**4.** The crime of larceny subsequently has been subsumed under a more general criminal statute prohibiting theft. I.C. § 18–2401(1).

committed.); *Criminal Law*, § 87, p. 635 ("[D]ifferent articles stolen at one time and place from the same victim ... can be aggregated [to constitute grand larceny].").

As the California Supreme Court noted: "[A] charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once." *Wilkoff v. Superior Court*, 38 Cal.3d 345, 211 Cal.Rptr. 742, 696 P.2d 134, 137 (1985).[5] Major's alleged possession occurred all at once and all as a part of a single incident. Thus, she committed but one offense. Accordingly, she was properly charged in the information with but one offense, and the amendment to the information adding the property recovered from the pawn shop under the same offense was permissible.

Having determined that Major was properly charged with a single offense, we must now determine whether this fact, along with the fact that one item allegedly possessed was located off the reservation, renders harmless any error as to jurisdiction inside the reservation. I.C.R. 52 explains harmless error as follows: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Accordingly, we must examine the record in order to determine whether the alleged error could have affected Major's substantial rights.

The record supports Major's assertion that it is impossible to determine whether the jury convicted Major for only the alleged possession of property on the reservation, or for both alleged possessions. The jury rendered only a general verdict of finding Major guilty of grand theft by possessing stolen property in violation of I.C. §§ 18–2403(4) and 18–2407(1)(b)1. The verdict did not indicate whether the jury believed Major possessed only the property allegedly possessed on the reservation, or only the property allegedly possession off

the reservation, or both. The items allegedly possessed on the reservation by themselves could have amounted to grand theft as established in I.C. § 18–2407(1)(b)1, since their value exceeded $150, R., Vol. 1, pp. 115, 145–49, 184–88, and so too could the one item allegedly possessed off the reservation. R., Vol. 1, pp. 183, 200. Thus, the fact that the jury found Major guilty of grand theft by possession fails to enlighten us.

The record also supports Major's assertion that the jury may well have convicted her solely on the basis of the alleged possession on the reservation. Major argued she was under duress when she pawned the one item in Lewiston. *See* R., Vol. 1, p. 246. If the jury accepted this defense, but still believed she illegally possessed the stolen property on the reservation, it may have convicted her for possession of that property alone.

Quite clearly, then, if the district court erred in finding it had jurisdiction over Major for the offense of possession on the reservation, such an error would not be harmless. To the contrary, the error could have resulted in the conviction of Major even though the state lacked jurisdiction. Obviously, the state cannot prosecute where it lacks jurisdiction. "[T]he burden of proof is on the [state] to sustain the jurisdiction of the court" over an Indian in Indian country. *State v. Allan*, 100 Idaho 918, 920, 607 P.2d 426, 428 (1980); *see also Paradis v. State*, 110 Idaho 534, 542, 716 P.2d 1306, 1314, (1986) ("[A] person cannot be tried by a court without jurisdiction to do so."). Error is only harmless if, "beyond a reasonable doubt, ... there was no reasonable possibility that [the error] complained of contributed to the conviction." *State v. Sharp*, 101 Idaho 498, 507, 616 P.2d 1034, 1043 (1980); *see also Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). Here,

---

**5.** However, where a single *act of violence* is committed with an intent to harm more than one person with means likely to harm more than one person, and results in multiple victims, multiple punishments are warranted and permitted. *Id.* 211 Cal.Rptr. at 745, 696 P.2d at 138 (stating the rule of *Neal v. State,* 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960)), *cert denied,* 365 U.S. 823, 81 S.Ct. 708, 5 L.Ed.2d 700 (1961).

there is a reasonable possibility that the alleged error not only contributed to the conviction, but also made the conviction possible *at all.*

Accordingly, we must determine whether or not the state had jurisdiction within the reservation over an Indian alleged to have committed the crime of grand theft by possession of stolen property. If it did not, because the jury might have convicted Major for possession there and there only, we would be compelled to reverse Major's conviction and remand for a new trial. *Id.; cf. Salinas v. Vierstra,* 107 Idaho 984, 991, 695 P.2d 369, 376 (1985) (Where "[i]t is entirely too plausible that the jury may have reached its verdict based on or guided by the erroneous instructions," this Court reversed the district court's decision and remanded for a new trial.).

## II.

■ When addressing the question of state jurisdiction in Indian country, we are guided by the canon of construction that federal and state "statutes passed for the benefit of Indians are to be construed in the Indians' favor." *Sheppard v. Sheppard,* 104 Idaho 1, 15, 655 P.2d 895, 909 (1982) (construing 25 U.S.C. § 1322(b) and I.C. § 67–5103); *see also, e.g., Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 105 S.Ct. 2399, 2403–04, 85 L.Ed.2d 753 (1985) ("[S]tatutes are to be construed liberally in favor of Indians, with ambiguous provisions interpreted to their benefit [citations and footnote omitted]."); *Matter of Adoption of Buehl,* 87 Wash.2d 649, 555 P.2d 1334, 1337 (1976) (canon governs reading of state and federal statutes); *see generally,* F. Cohen, *Handbook of Federal Indian Law,* pp. 221–25 (1982 ed.) (hereinafter Cohen); Comment, *The Canons of Indian Treaty and Statutory Construction: A Proposal for Codification,* 17 U. of Mich. J.L. Ref. 681, 689–91 (1984) (hereinafter *Canons*).[6] The central reason for this canon is to respect and preserve vestigial Indian sovereignty. *Williams v. Lee,*

358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959) ("Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."); *State v. Jojola,* 99 N.M. 500, 660 P.2d 590, 592 (1983), *cert. denied,* 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69; *Board of Equalization v. Alaska Native Brotherhood and Sisterhood, Camp No. 14,* 666 P.2d 1015, 1021 (Alaska 1983); *Duluth Lumber & Plywood Co. v. Delta Development, Inc.,* 281 N.W.2d 377, 381 (Minn. 1979) ("State jurisdiction must not interfere with Indian self-government, absent some compelling state interest." (Footnote omitted.)); *Buehl, supra,* 555 P.2d at 1337 ("The principle of Indian sovereignty is a backdrop against which to read the applicable treaties and statutes, state and federal, which define the limits of state power."); *see Canons, supra,* 17 U. of Mich.J.L.Ref. at 704; T. Vollman, *Criminal Jurisdiction in Indian Country: Tribal Sovereignty and Defendants' Rights in Conflict,* 22 U.Kan.L.Rev. 387, 389 (1974); *cf. Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 559–61, 8 L.Ed. 483 (1832) (Indian nations are "distinct, independent political communities, retaining their original natural rights.... The Cherokee nation, then, is a distinct community, occupying its own territory, with boundaries accurately described, in which the laws of Georgia can have no force...."). The extension of state jurisdiction over Indians in Indian country erodes that sovereignty. *See Williams,* 358 U.S. at 223, 79 S.Ct. at 272; *see generally* Cohen, *supra,* at 361. Consequently, we must narrowly construe statutes extending state jurisdiction over Indians in Indian country.

■ States have no jurisdiction over Indians in Indian country without the clear consent of Congress. *McClanahan v. State Tax Commission of Arizona,* 411 U.S. 164, 170–71, 93 S.Ct. 1257, 1261, 36 L.Ed.2d 129 (1973); *Boyer v. Shoshone-*

---

**6.** Contrary to the inference of the dissent, we *are* construing I.C. § 67–5102—in particular, its

provision requiring the tribe's "consent" to jurisdiction.

*Bannock Indian Tribes,* 92 Idaho 257, 260, 441 P.2d 167, 170 (1968). In 1953, with Public Law 83–280 (18 U.S.C. § 1162, 25 U.S.C. §§ 1321–1326, 28 U.S.C. § 1360), Congress offered Idaho the option of assuming jurisdiction over certain criminal and civil matters in Indian country within Idaho's borders.[7] At the time, Idaho was not *required* to obtain the consent of the tribes involved, although subsequently P.L. 83–280 has been amended to prospectively require the tribe's consent to new assertions of state jurisdiction. 25 U.S.C. § 1326.

The state of Idaho responded with the passage of I.C. §§ 67–5101 *et seq.* (Chapter 51, Jurisdiction in Indian Country). I.C. § 67–5101 provided for state criminal and civil jurisdiction over certain "matters and purposes" not at issue here. In I.C. § 67–5102, the state assumed additional jurisdiction with the consent of the concerned tribe's governing body:

> **67–5102. Additional state jurisdiction with consent of tribe governing body.**—Additional state jurisdiction in criminal and civil causes of action may be extended to particular reservations or Indian country *with the consent of the governing body of the tribe* occupying the Indian country effected [affected] by the assumption of such additional jurisdiction. This may be achieved by negotiation with the tribe or by unilateral action by the tribe. In every case *the extent of such additional jurisdiction shall be determined by a resolution of the tribal governing body* and become effective upon the tribe's transmittal of the resolution to the attorney general of the state of Idaho. Such resolution may effectively accept jurisdiction as to any particular field of criminal or civil jurisdiction. All state jurisdiction extended by virtue of this act shall be concurrent (and not exclusive) with jurisdiction in the same matters existing in the tribes or the federal government. (Emphasis added.)

Addressing this statute, this Court has unanimously held: "[S]tate court jurisdiction, if such exists herein ... must be derived by what, in effect, is a *bilateral agreement* between the State of Idaho and the [tribe affected] to confer jurisdiction to the state courts." *Boyer, supra,* 92 Idaho at 262, 441 P.2d at 172 (emphasis added.)

On April 13, 1965 the Nez Perce Tribal Executive Council consented to the state's jurisdiction over certain offenses with Tribal Resolution 65–126, quoted here in pertinent part:

> NOW, THEREFORE, BE IT RESOLVED, by the Nez Perce Tribal Executive Committee, the governing body of the Nez Perce Indian Reservation, in the

---

**7.** The federal government retains exclusive jurisdiction over certain serious criminal offenses. 18 U.S.C. §§ 1153, 3242 certain serious criminal offenses. 18 U.S.C. §§ (Indian Major Crimes Act). Included among these was larceny, which was replaced by amendment on October 12, 1984 with a reference to "a felony under section 661 of this title." 18 U.S.C. § 1153; Pub.L. 98–473, Title II, § 1009, 98 Stat. 2141. This amendment was effective prior to the culmination of Major's trial. R., Vol. 2, p. 46. 18 U.S.C. § 661 provides in part:

> **§ 661. Within special maritime and territorial jurisdiction.**
> Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished as follows:
> If the property taken is of a value exceeding $100, or is taken from the person of another, by a fine of not more than $5,000, or impris-

onment for not more than five years, or both; in all other cases, by a fine of not more than $1,000 or by imprisonment not more than one year, or both.

A broad reading of this offense might include the offense of grand theft by possession of stolen property. However, in order to limit the extent of federal jurisdiction over Indians in Indian country, 18 U.S.C. § 1153 (along with the cross-referenced § 661) is strictly construed and cannot be extended by intendment to crimes not clearly within its terms. *Kills Crow v. United States,* 451 F.2d 323, 325 (8th Cir.1971), *cert. denied* 405 U.S. 999, 92 S.Ct. 1262, 31 L.Ed.2d 467; *see generally* 18 U.S.C.A. § 1153 note 5. Major was charged only with possession of stolen property, not with its taking. One element of the offense governed by 18 U.S.C. § 661 is taking. We conclude that 18 U.S.C. § 661 (and along with it 18 U.S.C. § 1153) does not create federal jurisdiction over the crime of possession of stolen property.

aforesaid counties of the State of Idaho, at a duly constituted meeting of said Committee, that consent is given to the assumption by the State of Idaho of concurrent criminal jurisdiction within the Nez Perce Indian Reservation over the following offenses:

Drunkness, Disturbing the peace, Contributing to the delinquency of minors, Procuring intoxicants for minors, Simple assault, Battery, Kidnapping, Embezzlement, Fraud, Forgery, *Receiving stolen property*, Extortion, Indecency and obscenity, Vagrancy, Trespassing and malicious injuries to property, Public nuisance and abatement thereof, Cruelty to animals, and carrying concealed and dangerous weapons in public places (the carrying of firearms in pursuit of treaty hunting rights expressly excluded). (Emphasis added.)

We must determine whether this resolution granted consent to jurisdiction over Major for the crime with which Major was charged. Because the state has the burden to establish its jurisdiction over an Indian in Indian country, *Allan, supra*, 100 Idaho at 920, 607 P.2d at 428; *see also Sheppard, supra*, 104 Idaho at 15, 655 P.2d at 909 (stating the canon of construction which requires this Court to narrowly construe statutes extending state jurisdiction over Indians in Indian country), and because jurisdiction exists only where the tribe consented, it follows that the state has the burden to establish that the tribe consented to its jurisdiction.

Major was charged with and convicted of grand theft by possessing stolen property, an offense found within I.C. § 18–2403(4) and 18–2407(1) (establishing that "a theft as defined in this chapter" is grand theft when, under subsection (b)1, "[t]he property is not livestock and the value of the property exceeds one hundred fifty dollars ($150)...."). I.C. § 18–2403(4) provides:

A person commits theft when he knowingly receives, retains, conceals, obtains control over, *possesses*, or disposes of stolen property, knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(a) Intends to deprive the owner permanently of the use or benefit of the property; or

(b) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(c) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit. (Emphasis added.)

To satisfy its burden of demonstrating the tribe's consent to jurisdiction over its members charged with this crime, the state advances two arguments: (1) that the tribe consented to the state's jurisdiction over a "class" of crimes which included the crime with which Major was charged, and (2) the present offense embodied within I.C. § 18–2403(4) is but a recodification of the crime of receiving stolen property, over which the tribe consented to the state's jurisdiction. We will address these arguments in turn.

An examination of the tribal resolution belies the argument that the tribe consented to jurisdiction over a "class" of offenses which included the offense with which Major was charged. The tribe stated its consent to the state's jurisdiction over a list of eighteen "offenses." Several of these did constitute "classes" of offenses rather than individual offenses in 1965, such as "embezzlement" (which encompassed a chapter of a number of related offenses), and fraud (which appeared in various forms). None of these could conceivably include the crime of grand theft by possessing stolen property. This is a crime relating to theft of property, as is embezzlement. *Criminal Law, supra*, Ch. 8, § 89. However, embezzlement, which typically included the element of the defendant initially being in lawful possession of the embezzled property, quite obviously does not include the crime of possession of stolen property. *Id.*

Most of the offenses listed constitute individual offenses corresponding to specific offenses found in the former Idaho Code, such as disturbing the peace (I.C. § 18–6409), simple assault (I.C. § 18–901), battery (I.C. § 18–903), kidnapping (I.C. § 18–4501), vagrancy (I.C. § 18–7101), and receiving stolen property (I.C. § 18–4612).[8] None of these are broad enough to include the charge with which Major was charged.

▆▆ ▆▆ The last clearly comes closest to the offense charged against Major. However, former, I.C. § 18–4612 described a crime with different elements than the current crime of possessing stolen property. Former I.C. § 18–4612 provided:

> **18–4612. Receiving stolen property.** —Every person who, for his own gain, or to prevent the owner from again possessing his property, *buys or receives* any personal property, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding $1,000, or by both such fine and imprisonment. (Emphasis added.)

Major was. charged as "[a] person [who] ... knowingly ... *possesses* ... stolen property...." I.C. § 18–2403(4) (emphasis added). Thus, under this part of I.C. § 18–2403(4) the state would not have to prove that Major *bought or received* any stolen property, as it would have had to prove with old I.C. § 18–4612, but only that she *possessed* it. As this Court stated concerning old I.C. § 18–4612:

> Before a defendant can be convicted in a case like this, four things must be established to the satisfaction of the jury beyond a reasonable doubt: (1) That the property was stolen; (2) *that either the thief delivered it to the defendant, or to someone else who delivered it to him;* (3) That at the time the defendant received the possession of the property he

knew it was stolen, or that it was received under such circumstances that any reasonable person of ordinary observation would have known that it was in fact stolen property; and (4) that he received it for his own gain or to prevent the owner from again possessing it. *State v. Janks,* 26 Idaho 567, 582, 144 P. 779, 783–84 (1914) (emphasis added).

Clearly, the second element present in old I.C. § 18–4612 is absent from the "possession" crime in new I.C. § 18–2403(4). In construing Montana's identical statute on receiving stolen property, the Montana Supreme Court held that the "[m]ere possession of stolen property is not a criminal offense." *State v. Peters,* 146 Mont. 188, 405 P.2d 642, 651 (1965); *see generally* 66 Am.Jur.2d *Receiving Stolen Property,* § 5. We conclude that the tribal resolution did not grant consent over a class of offenses which included grand theft by possession of stolen property.

▆▆ As the above discussion indicates, neither do we conclude that the crime of grand theft by possession of stolen property found in I.C. § 18–2403(4) was a mere recodification of old I.C. § 18–4612. It is true that old I.C. § 18–4612 was superseded by and subsumed within the new I.C. § 18–2403(4). I.C. § 18–2401(1) reads: "Conduct denominated theft in this chapter constitutes a single offense superseding the separate offenses previously known as embezzlement, extortion,. false pretenses, cheats, misrepresentations, larceny and *receiving stolen goods.*" (Emphasis added.) The language of I.C. § 18–2403(4) evinces this fact: "A person commits theft when he knowingly *receives* ... stolen property." (Emphasis added). However, I.C. § 18–2403(4) also forbids the retaining, concealing, obtaining control over, disposing of, and *possessing* of stolen property. Clearly, I.C. § 18–2403(4) is considerably *broader* than old I.C. § 18–4612; it was no mere recodification.[9]

---

**8.** This is in contrast with the dissent's assertion that "[n]early all of the crimes set out in the Indian ordinance granting jurisdiction to the state are described in classes of offenses rather than particular offenses."

**9.** The fact that I.C. §§ 18–2401 and 18–2403(4) *at present* generally categorize the crimes of "possession" and "receiving" as thefts fails to alter the facts that old I.C. § 18–4612 corresponds only to the latter subcategory, and that

As previously noted, the crime of *possessing* stolen property by definition contains a different element than the crime of *receiving* stolen property. It bears repeating that mere possession of stolen property is *not* the same crime as receiving stolen property. *Janks, supra,* 26 Idaho at 582, 144 P. at 783–84; *Peters, supra,* 405 P.2d at 651. I.C. § 18–2403(4) recognizes the two as distinct when it lists them separately, connected with the disjunctive "or."

Old I.C. § 18–4612 contains other substantial distinctions from the provisions of new I.C. § 18–2403(4) in addition to that described above. To violate I.C. § 18–4612, the defendant was required to *know* the property was stolen. I.C. § 18–2403(4) requires that the defendant knew or under the circumstances would reasonably have been induced to believe that the property was stolen. Under I.C. § 18–2403(4), the state's proof problem is easier.

An element of old I.C. § 18–4612 was that the perpetrator received the stolen property "for his own gain, or to *prevent* the owner from again *possessing* his property...." (Emphasis added.) New I.C. § 18–2403(4) contains a broader element:

(a) Intends to *deprive the owner permanently of the use or benefit* of the property; or

(b) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(c) Uses, conceals, or abandons the property knowing such use, concealment or abandonment *probably will deprive* the owner permanently of such use or benefit. (Emphasis added.)

Finally, old I.C. § 18–4612 provided for punishment "by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding $1,000, or by both such fine and imprisonment." Commission of grand theft by possessing stolen property in violation of new I.C. §§ 18–2403(4) and 18–2407(1)(b)1 is subject to considerably harsher punishment: "by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison for not less than one (1) year nor more than fourteen (14) years, or by both such fine and imprisonment." I.C. § 18–2408(2)(a).

In light of (1) the canon of construction directing that I.C. § 67–5102 (including its term "consent") be construed narrowly, and of (2) all these substantial differences between the crime of *receiving* stolen property found in old I.C. § 18–4612 and the crime of grand theft by *possessing* stolen property found in new I.C. § 18–2403(4), the state has failed its burden to show that the tribe's consent to jurisdiction over an Indian who violated the former in 1965 constitutes contemporary consent to jurisdiction over an Indian who violated the

---

old I.C. § 18–4612 contained the element of *"receiving"* which is conspicuously absent from the specific crime of "grand theft by possession" with which Major was charged. *Janks, supra.* Major was charged with *possessing, not receiving.* It cannot be said that the tribe in 1965 meant to consent to jurisdiction over every crime with which "receiving" was later lumped.

The element of receiving is of considerable consequence. One can find and possess stolen property or steal it one's self without having received it from another. Notably, the State charged Major under I.C. § 18–2403(4) with *possessing* stolen property and not with *receiving* stolen property, as it could have done. Major is alleged to have been an accomplice in the theft itself. In charging Major with possession, the State may have deemed it difficult to establish that Major ever received the stolen property, rather than having participated in the theft it-

self. As Major was charged, the State was not required to prove "that either the thief delivered it [the stolen property] to the defendant, or to someone else who delivered it to him...." *Janks, supra.*

The dissent's assertion that the tribe could not have "understood" or "comprehended" the difference between the crimes of receiving and possessing stolen property is of doubtful accuracy, and at any rate is irrelevant. The tribe need not have understood such a distinction in 1965, because there *was no* crime of possessing stolen property at the time. The tribe consented to the extant crime of receiving stolen property, using precisely the title to old I.C. § 18–4612. The tribe could not have consented to jurisdiction over a crime which did not exist in 1965, particularly when it was consenting to jurisdiction concerning a specific statute.

latter.[10] Without bilateral, effective consent, the state has no jurisdiction. *Boyer, supra,* 92 Idaho at 262, 441 P.2d at 172.[11]

■ As previously explained, the jury may have convicted Major for committing this crime in Indian country only, where we have determined the state lacked jurisdiction over her for the commission of this crime. Accordingly, we must reverse the conviction and remand to the district court for a new trial.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, dissenting:

I concur in Part I of the Court's opinion which concludes that the information charged only a single offense.

As to Part II, the distinction which the majority draws between "receiving" and "possessing" stolen property simply overlooks the Idaho statutes. When the criminal statutes relating to personal property crimes were redrafted and recodified in 1981, the crime of receiving stolen property, formerly contained in I.C. § 18–4612 in effect in 1965, the year the tribal resolution was adopted bestowing jurisdiction on the state, was carried over into I.C. § 18–2403(4). The old code section 18–4612 read:

> "**18–4612. Receiving stolen property.—** *Every person who,* for his own gain, or to prevent the owner from again possessing his property, buys or *receives any personal property, knowing the same to have been stolen,* is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not

exceeding $1,000, or by both such fine and imprisonment."

The new section 18–2403(4) reads:

> *"A person commits theft when he knowingly receives,* retains, conceals, obtains control over, possesses, or disposes of *stolen property, knowing the property to have been stolen by* another or under such circumstances as would reasonably induce him to believe that the property was stolen...."

The operative parts of the old section and the new section are substantially the same, *i.e.,* a person commits a crime when he receives personal property knowing the property to have been stolen. I.C. §§ 18–4612 and 18–2403(4) are the same crime. The legislature has expressly said so in 1981, in I.C. § 18–2401(1):

> "Conduct denominated theft in this chapter constitutes a single offense superseding the separate offenses previously known as embezzlement, extortion, false pretenses, cheats, misrepresentations, larceny and *receiving stolen goods.*"

The legislature then, in subparagraph (2) of I.C. § 18–2401, stated that an accusation of theft under the new consolidated chapter could be supported by evidence of any of the other types of property crimes prior to the consolidation. Subsection (2) states:

> "(2) An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the indictment, information or complaint, subject only to the power of the court to ensure fair trial by granting a continuance or

---

10. Had Major been charged with *receiving* stolen property, our result might have been different. This, however, *is not the question before us.*

11. It may be that the Nez Perce tribe *desires* state jurisdiction over tribal members charged with possession of stolen property, or charged with a class of crimes including possession of stolen property. I.C. § 67–5102 clearly provides that they may achieve this result by "unilateral action." Under I.C. § 67–5102, this action could take the form of a "resolution of the tribal governing body." However, future extensions

of state jurisdiction over Indian country pursuant to P.L. 83–280 must comply with 25 U.S.C. § 1326, which requires "a majority vote of the adult Indians voting at a special election held for that purpose."

Just as clearly, however, Tribal Resolution 65–126, passed in 1965, which consents to jurisdiction concerning the former crime of receiving stolen property, fails to effectively consent to the crime of possession of stolen property, enacted in 1981. The latter crime did not even exist at the time of the tribe's resolution.

other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise."

In this case, the information read in relevant part:

"GRAND THEFT BY POSSESSION STOLEN PROPERTY, I.C. 18–2403(4) and 18–2407, a Felony, on or about May 26, 1984, in that said defendant did willfully, unlawfully, intentionally, knowingly, and feloniously possess stolen property, to-wit. . . ."

It is clear from I.C. § 18–2401(2) that the foregoing charge in the information could be proved by evidence that the defendant received stolen property. The majority opinion acknowledges that the 1965 tribal resolution extended jurisdiction to the crime set out in the old I.C. § 18–4612. Since that section and the new section, 18–2403(4), both make it a crime to receive stolen property, the distinction which the majority attempts to draw between those two criminal statutes misapprehends the action which the legislature took in moving the old I.C. § 18–4612 into the new provision, I.C. § 18–2403(4), the section under which the defendant was charged. Since "receiving" stolen property was a crime under both the old and the new statute, no distinction can rationally be drawn between the crimes charged therein.[1]

Furthermore, the majority opinion's statement that you can possess stolen property without receiving it misses the point. Under the old statute receiving stolen property is a crime, as it is under the new statute. Accordingly, under either statute, receiving stolen property is the same crime. That is what the legislature was referring to when it stated in the new consolidated statute, I.C. § 18–2401(2), "An accusation of theft may be supported by evidence that it was committed *in any manner* that would be theft under this chapter [which includes either "possessing" or "receiving"], notwithstanding the specification of a different manner in the . . . information. . . ."

The cardinal rule of construction of any written document is to carry out the intent of the drafters. Here, we are construing the 1965 Tribal Resolution, adopted by the Tribal Executive Committee.[2] To suggest that the Indians understood and intended that the jurisdiction they were extending to the state would or would not take effect based upon the distinction which the Court's opinion draws between the words "received" and "possessed" is difficult to imagine. When it is remembered that the victim of this crime was an Indian, and when it is remembered that the apparent reason for the Indians granting jurisdiction to the state was to obtain the protection of the state criminal laws and the benefit of state and local law enforcement for the members of the tribe, it is difficult to imagine that the Indians, in giving jurisdiction to the State of Idaho over the offenses of "receiving stolen property," ever could have comprehended, much less intended,

---

1. Nearly all of the crimes set out in the Indian ordinance granting jurisdiction to the state are described in classes of offenses, rather than particular offenses. Receiving stolen property would appear similarly to be a class offense designation, not a description of the particular offense set out in I.C. § 18–4612, as the majority opinion asserts. But even if the designation in the tribal ordinance was specifically to I.C. § 18–4612, that section included jurisdiction over the crime of receiving stolen property, which is now contained in I.C. § 18–2403(4), the section under which the defendant Major was charged.

2. "NOW, THEREFORE, BE IT RESOLVED, by the Nez Perce Tribal Executive Committee, the governing body of the Nez Perce Indian Reservation, in the aforesaid counties of the State of Idaho, at a duly constituted meeting of said Committee, that consent is given to the assumption by the State of Idaho of concurrent criminal jurisdiction within the Nez Perce Indian Reservation over the following offenses:

"Drunkness, Disturbing the peace, Contributing to the delinquency of a minor, Procuring intoxicants for minors, Simple assault, Battery, Kidnapping, Embezzlement, Fraud, Forgery, *Receiving stolen property*, Extortion, Indecency and obscenity, Vagrancy, Trespassing and malicious injuries to property, Public nuisance and abatement thereof, Cruelty to animals, and carrying concealed and dangerous weapons in public places (the carrying of firearms in pursuit of treaty hunting rights expressly excluded)." (Emphasis added.)

the distinction or the result which Part II of the majority opinion achieves. It is their ordinance which we are construing, and we should construe it in a way which carries out the apparent intent of the Indians, which was to obtain the benefits of state laws and law enforcement to protect the members of their tribe. I, for one, cannot believe that the Indians ever intended the result which the Court reaches today.

Accordingly, I would affirm the judgment of the district court.

SHEPARD, J., concurs.