777 P.2d 1253

STATE of Idaho, Plaintiff–Respondent,

v.

**Leonard J. MAREK,
Defendant–Appellant.**

No. 17143.

Court of Appeals of Idaho.

Aug. 4, 1989.

Lee Sims (Fitzgerald & Sims), Lewiston, for defendant-appellant.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Leonard Marek, a member of the Nez Perce Indian tribe, stands convicted by a jury of aggravated battery and felony injury to a child. His case is on appeal for a second time. In the first appeal, our Supreme Court held that the state lacked jurisdiction over Marek with respect to the aggravated battery. *State v. Marek*, 112 Idaho 860, 736 P.2d 1314 (1987) (*Marek I*). The conviction on that charge was set

aside, and the case was remanded for entry of a judgment on the conviction for felony injury to a child. The district court complied, imposing a ten-year fixed sentence for that crime.

In this appeal, Marek contends that the state lacked jurisdiction not only with respect to the aggravated battery but also with respect to the felony injury. He further contends that even if the state had jurisdiction, the ten-year fixed sentence for felony injury was unduly harsh. For reasons explained below, we affirm the judgment including the sentence.

The unhappy facts of this case are set forth in *Marek I.* They need not be detailed here. It suffices to say that the aggravated battery and felony injury charges arose from an incident in which Marek inflicted severe brain damage upon his two-month-old daughter. Although Marek was found guilty on both charges, the district court initially entered judgment only on the aggravated battery. The judgment was overturned when our Supreme Court held that aggravated battery, perpetrated by an Indian upon an Indian victim on an Indian reservation, is governed exclusively by federal law. *See* 18 U.S.C. § 1153 ("Major Crimes Act"). However, the Supreme Court also held that felony injury to a child is outside the scope of exclusive federal jurisdiction and is within the jurisdiction exercised by the state under Public Law 280. *See* 67 U.S. Statutes at Large 588 (1953).

## I

In this appeal, Marek has raised the jurisdictional issue again, advancing two related arguments. First, he contends, notwithstanding *Marek I,* that felony injury to a child is factually coextensive with aggravated battery, therefore falling within the exclusive federal jurisdiction provided by the Major Crimes Act. Second, he argues that regardless of whether exclusive federal jurisdiction exists, there is no state jurisdiction because (i) Idaho's statute on felony

injury to a child is an adjunct of a civil regulatory scheme outside the ambit of Public Law 280; and (ii) the felony injury statute has been upgraded from a misdemeanor, and the statutory definition of the crime has been changed, since the state accepted jurisdiction under Public Law 280. We will address these arguments in turn.

## A

■ As Marek candidly acknowledges, the Supreme Court in *Marek I* decided adversely to him the issue of whether felony injury to a child falls within exclusive federal jurisdiction. However, he justifies raising the issue again by citing the familiar proposition that jurisdiction is a fundamental question that may be addressed at any stage of the proceedings. *See, e.g., State v. Rollins,* 103 Idaho 48, 644 P.2d 370 (Ct.App.1982), *citing State v. Tinno,* 94 Idaho 759, 497 P.2d 1386 (1972).

It is one thing to say that a jurisdictional issue may be raised at any time; it is quite another to say that the issue, having been decided in one appeal, should be decided differently when a second appeal is taken in the same case. We believe the Supreme Court has laid down the law of this case by holding that exclusive federal jurisdiction does not bar state prosecution for felony injury to a child. We are mindful, of course, that the "law of the case" doctrine is not an inexorable command; it is an expression of judicial policy. An appellate court in a second appeal has the power to remedy any injustice flowing from its decision in the first appeal. *Bergkamp v. Martin,* 114 Idaho 650, 651–52, 759 P.2d 941, 943–44 (Ct.App.1988). But that power must be employed sparingly, and we think our Court should not employ it at all where the first appeal has been decided by the Supreme Court. Accordingly, we deem the federal jurisdictional question to be settled. The issue requires no further discussion.

## B

We now turn to Marek's argument that felony injury to a child does not fall within

the state's jurisdiction under Public Law 280. The points urged by Marek in this appeal were not fully developed before the Supreme Court in *Marek I.* Accordingly, we will examine them to ascertain that the fundamental requisite of jurisdiction has been satisfied.

i

■ We first consider Marek's assertion that I.C. § 18–1501(1), the statute proscribing felony injury to a child, falls outside the scope of state jurisdiction granted by Public Law 280 because it is an adjunct to a civil regulatory scheme established for the protection of children. *See* I.C. §§ 16–1601 to 16–1629 (Child Protective Act) and I.C. §§ 16–2001 to 16–2014 (Parent–Child Relationship Termination Act). Marek invites our attention to *Bryan v. Itasca County,* 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), and to *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), in which the United States Supreme Court declared that Public Law 280 does not empower states to implement civil regulatory schemes in Indian country.

As the Supreme Court explained in *Bryan* and *Cabazon Band,* Public Law 280 was enacted in 1953 to alleviate two problems perceived by Congress: inadequate prosecution of crimes committed by Indians against each other in Indian country, and a lack of effective judicial mechanisms to resolve civil disputes between Indians in Indian country. To close these perceived gaps, Public Law 280 contained peremptory grants of civil and criminal jurisdiction to the states. It made such grants specifically to the states of Alaska, California, Minnesota, Nebraska, Oregon and Wisconsin. *See* 18 U.S.C. § 1162. It also made such grants generally to any other state that by statute assumed the jurisdiction and specified the subject areas in which the jurisdiction would be exercised. Idaho accepted this general grant of jurisdiction by enacting I.C. §§ 67–5101 to 67–5103 in 1963.

In 1968, Congress softened the impact of Public Law 280 by requiring the states to obtain consent of the tribes before assuming jurisdiction. However, this requirement did not affect the peremptory grants of jurisdiction that already had been accepted. *See* 25 U.S.C. § 1321, 1322.

In *Bryan* and *Cabazon Band,* the Supreme Court probed the limits of peremptorily granted jurisdiction. *Bryan* arose when a Minnesota county attempted to exercise jurisdiction under Public Law 280 by assessing property taxes upon a mobile home owned by an Indian on an Indian reservation. The United States Supreme Court held that Public Law 280 did not authorize states, or their subdivisions, to impose property taxes in Indian country. The Court later broadened this ruling, and articulated its conceptual basis, in *Cabazon Band.* There, the Court held that a California statute governing bingo games was not enforceable on Indian reservations. The Court explained that the civil jurisdiction conferred by Public Law 280, authorizing states to adjudicate civil disputes between Indians, did not empower the states to subject Indians to civil regulatory schemes. Neither did the grant of criminal jurisdiction include the enforcement of laws which were primarily regulatory, rather than prohibitory, in nature. The Court said that the "shorthand test" for determining whether a statute is regulatory or prohibitory is whether the conduct governed by the statute is contrary to the state's public policy. *Cabazon Band,* 480 U.S. at 209, 107 S.Ct. at 1088. The Court concluded that bingo games were not contrary to California's public policy; that the statute governing them was regulatory rather than prohibitory; and, therefore, that the statute did not fall within the state's grant of criminal jurisdiction under Public Law 280.

In our view, the present case stands in stark contrast to *Bryan* and *Cabazon Band.* It involves a criminal statute, I.C. § 18–1501(1), which proscribes and punishes certain kinds of injury to children. The statute has a logical place in our criminal

code. It is not a mere adjunct to the Child Protective Act or Parent–Child Relationship Termination Act. Moreover, no one can gainsay that felony injury to children is contrary to the public policy of our state. Idaho does not merely "regulate"—rather, it prohibits and seeks to eliminate—injury to children. Indeed, the same can be said of the Child Protective Act and the Parent–Child Relationship Termination Act. These statutes do not simply "regulate" the abuse, neglect or abandonment of children; rather, they seek to prevent and to ameliorate the tragic effects of such conduct. Therefore, we conclude that felony injury to a child falls within the criminal jurisdiction granted by Congress under Public Law 280 and accepted by Idaho in 1963 through its enactment of I.C. §§ 67–5101 to 67–5103.

ii

■ We next consider Marek's argument that even if the state has jurisdiction under Public Law 280, such jurisdiction extends not to the present version of I.C. § 18–1501(1) but rather to a prior version of the statute in existence when Idaho accepted the grant of jurisdiction. Marek notes that when jurisdiction was accepted in 1963, injury to a child was defined as a misdemeanor. The statute did not then require, as it does today, proof of "circumstances or conditions likely to produce great bodily harm or death...." Accordingly, Marek contends, the present statute's prohibition of felony injury to children is not among the crimes over which the state now may exercise jurisdiction pursuant to Public Law 280.

We disagree. Idaho Code § 67–5101 recites that Idaho has assumed jurisdiction for the "criminal enforcement of state laws ... concerning the following matters and purposes arising in Indian country located within this state ...: [i] * * * C. Dependent, neglected and abused children * * *." This language contains no limitation to a particular statute or to the extant version of a statute at a particular time. Rather, it

embraces all state laws pertaining to "[d]ependent, neglected and abused children."

Having been granted, and having accepted, jurisdiction over this general subject area, the state was empowered to adopt or to amend statutes within the scope of the grant. Thus, after 1963, it was within the state's power to amend I.C. § 18–1501(1) by describing a more serious offense and by characterizing it as a felony with commensurately higher penalties. Our conclusion is consistent with a general principle set forth in C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 51.08 (4th ed. 1972), at 517:

A statute which refers to a subject generally adopts the law on the subject as of the time the law is enacted. This will include all the amendments and modifications of the law subsequent to the time the referenced statute was enacted.

*See also Somermeier v. District Director of Customs,* 448 F.2d 1243 (9th Cir.1971) (California statute incorporating federal law on importation of liquor held to embrace subsequent amendments to federal law).

Marek has argued that general principles of statutory construction are not applicable to laws governing Indian affairs, because such laws reflect the unique historic fact of tribal sovereignty. We agree that Indian law questions are largely *sui generis,* requiring special sensitivity. *See generally* Burnett, *An Historical Analysis of the 1968 "Indian Civil Rights Act,"* 9 HARV. J. LEGIS. 557, 614–22 (1972). However, in this case, we do not see how recognition of Idaho's power to amend I.C. § 18–1501(1) creates any greater encroachment upon tribal sovereignty than that already contained in Public Law 280 and in the state's assumption of such jurisdiction under I.C. § 67–5101.

Marek cites *State v. Major,* 111 Idaho 410, 725 P.2d 115 (1986), for the proposition that our state's assumption of jurisdiction in I.C. § 67–5101 is limited to particular criminal statutes in effect in 1963. Ma-

rek's reliance on *Major* is misplaced. The issue in *Major* was not the scope of jurisdiction assumed by the state pursuant to the peremptory grant contained in Public Law 280. Rather, it was the scope of additional jurisdiction later granted to the state by an Indian tribe, pursuant to a voluntary agreement between the tribe and the state. The parties agreed that the state would exercise jurisdiction over several named offenses, including the crime of "receiving stolen property." At that time, the state had a statute, I.C. § 18–4612, dealing specifically with "receiving stolen property." The statute was applicable to any person "buy[ing]" or "receiv[ing]" such property. Subsequently, the statute was recodified as I.C. § 18–2403(4) and was broadened to include "possession" of stolen property. Our Supreme Court held that a state prosecution for mere "possession" of stolen property would fall outside the grant of jurisdiction upon which the state and the tribe had agreed.

The narrow holding of *Major* is not applicable here. This case does not turn upon an agreement granting jurisdiction over a specifically defined offense. Rather, it is governed by a statute, I.C. § 67–5101, broadly assuming jurisdiction over "[d]ependent, neglected and abused children." As we said earlier, this statute is not limited to a particular offense as defined at a particular point in time. Accordingly, we conclude that the present version of I.C. § 18–1501(1), defining and proscribing felony injury to children, is within the jurisdiction assumed by the state under Public Law 280.

## II

■ We now turn to the sentencing issue. As noted above, the district court imposed a ten-year fixed sentence, the maximum penalty available under I.C. § 18–1501(1). Marek now claims that the sentence is excessive.

The crime in this case was committed prior to the Unified Sentencing Act, I.C. § 19–2513 (effective February 1, 1987). Accordingly, our standard of review is governed by *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), and by *State v. Miller*, 105 Idaho 838, 673 P.2d 438 (Ct.App.1983). In *Toohill*, we said that our primary focus in sentence review is on the probable duration of confinement. In *Miller*, we said that the duration of confinement imposed by a fixed sentence would be treated, for the purpose of appellate review, as the facial length of the sentence less the formula reduction for "good time" available as a matter of right under I.C. § 20–101A.

In 1986, the formula "good time" reduction was eliminated by statutory amendment; however, it remains applicable to cases, like this one, where a sentence has been imposed for a crime committed prior to the amendment. The pre-amendment version of I.C. § 20–101A allowed a reduction of ten days for each month served if the sentence was for a term of ten years or more. Accordingly, in this case, we deem the probable length of Marek's confinement to be approximately 3650 days, less 1200 days of formula "good time," leaving a difference of 2450 days—approximately six years and ten months. The question is whether confinement for such a period is reasonable.

In *Toohill* we elaborated the concept of reasonableness in sentencing:

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable. Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any rea-

sonable view of the facts, his sentence was excessive in light of the foregoing criteria.

103 Idaho at 568, 650 P.2d at 710. In applying the *Toohill* criteria, we conduct an independent examination of the record, focusing on the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982).

The crime in this case was one of the most serious imaginable under the statute defining felony injury to a child. Marek inflicted severe brain damage upon his two-month-old daughter, Elsie, by shaking her and striking her in the head. She suffered a subdural hematoma, three retinal hemorrhages in the left eye, a cerebral contusion and anoxic encephalopathy—a deprivation of oxygen to her brain tissue. The resultant death of brain tissue has produced atrophy on one side of Elsie's brain. She has made some progress since being characterized as a "vegetable" in *Marek I,* but she remains severely retarded in mental and motor development.

When he committed this crime, Marek was 39 years old, the father of six children through three marriages. He had received a general equivalency diploma while serving in the United States Navy, and had taken some college courses. However, he received a bad conduct discharge from the Navy after a long period of absence without leave. He had a history of alcohol-related offenses, including a large number of convictions for driving under the influence, one of which was adjudicated as a felony. In addition, he had been convicted of assault, resisting arrest, and two batteries (one of which had been committed on his third wife while she was pregnant).

When Marek was confined at the Idaho State Correctional Institution, awaiting our Supreme Court's decision in *Marek I,* he was evaluated by a clinical psychologist. The psychologist found Marek to be a model prisoner in an institutional setting. However, he determined that Marek had a propensity to violence which, tragically, could be attributed to his own subjection to abuse as a child. In the words of the psychologist:

> He now presents himself as a well intentioned man who is striving to change and amend. Common knowledge is that such situational based violence tendencies require continual reinforcement and control in most cases.... Lacking continued controls, Mr. Marek and others are prone to relapse into those behaviors even they themselves profess to abhor. Prison incapacitates but does not cure such behaviors.

The district judge noted the seriousness of the crime, stating that it "shocked the senses." He noted that incarceration for a ten-year term, less the available "good time," would provide a period of necessary therapy and rehabilitation. The court also noted that such a period of confinement would serve the sentencing objectives of retribution and protection of society. In our view, the judge gave appropriate reasons for his sentencing decision. The sentence is strict, but it does not represent an abuse of discretion. Accordingly, it will not be overturned.

The judgment of conviction, imposing a ten-year fixed sentence for felony injury to a child, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.